1   Jeffrey L. Fillerup, State Bar No. 120543
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
2   Rincon Center II, 121 Spear Street, Suite 200
    San Francisco, California 94105-1582
3   Telephone No.: 415.356.4600
    Fax No.: 415.356.4610
4   E-Mail: jfillerup@luce.com

5   James A. Goniea, State Bar No. 170849
    201 Gibraltar Road
6   Horsham, PA 19044
    Telephone No.: 610.668.2900
7   Fax No.: 610.664.5897
8   E-Mail: jgoniea@aamco.com

9   Attorneys for Defendant
    Cottman Transmission Systems, LLC
10

11

12                  UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                     SAN FRANCISCO DIVISION

15

16  JOSEPH BENCHARSKY, an individual;      Case No. 08-CV-03402 SI
    KUND, LLC, a California Limited Liability
17  Company; JOSEPH REGO, an individual;   **NOTICE OF MOTION AND MOTION**
    REMACH CHAPLET, INC., California       **TO COMPEL ARBITRATION AND**
18  Corporation,                           **MOTION TO DISMISS [F.R.C.P.**
                                           **12(b)(6)]**
19        Plaintiffs,

20  v.

21  COTTMAN TRANSMISSION SYSTEMS,
    LLC, a Delaware Limited Liability Company;
22  AMERICAN DRIVELINE SYSTEMS, INC.,
    a Delaware corporation; and DOES 1-50,
23                                         Date:      October 31, 2008
          Defendants.                      Time:      9:00 a.m.
24                                         Courtroom: 10 (Judge Ilston)

25        **TO:  THE PLAINTIFFS AND THEIR ATTORNEYS OF RECORD**

26        PLEASE TAKE NOTICE that on October 31,   2008 at 9:00 a.m. in Courtroom 10 (19th

27  Floor),  of the above Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102,

28  Defendant Cottman Transmission  Systems, LLC ("Cottman")   will move this Court for an

                                        1

1   order compelling the Plaintiffs to arbitrate all of their claims alleged in the complaint in the

2   American Arbitration Association pursuant to the arbitration provisions in the Plaintiffs' franchise

3   agreements and the Federal Arbitration Act.    Cottman will also move the Court for an order

4   dismissing the Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the

5   ground that all of the claims in the complaint are subject to mandatory arbitration.    In the

6   alternative to an order dismissing the complaint, Cottman will seek an order staying this case

7   while arbitrations are pending in the American Arbitration Association.

8        This Motion shall  be based on this Notice of Motion and Motion, the accompanying

9   Memorandum of Points and Authorities, the Declaration of William B. Jameson and the exhibits

10  attached thereto, the pleadings on file in this case, any matters for which the Court may take

11  judicial notice,  as well as any further evidence and argument submitted by Cottman  in support of

12  this Motion.

13  DATED: August 15, 2008        LUCE, FORWARD, HAMILTON & SCRIPPS LLP

14

15                      By:

16                          Jeffrey L. Fillerup
                            Attorneys for Defendant
17                          Cottman Transmission Systems, LLC

18

19

20

21

22

23

24

25

26

27

28

Case No. CV-03402 SI
NOTICE OF MOTION AND  MOTION TO
COMPEL ARBITRATION

301045043.1

Jeffrey L. Fillerup, State Bar No. 120543
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone No.: 415.356.4600
Fax No.: 415.356.4610
E-Mail:  jfillerup@luce.com

James A. Goniea, State Bar No. 170849
201 Gibraltar Road
Horsham, PA  19044
Telephone No.: 610.668.2900
Fax No.: 610.664.5897
E-Mail:  jgoniea@aamco.com

Attorneys for Defendant
Cottman Transmission Systems, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH BENCHARSKY, an individual; KUND, LLC, a California Limited Liability Company; JOSEPH REGO, an individual; REMACH CHAPLET, INC., California Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> COTTMAN TRANSMISSION SYSTEMS, LLC, a Delaware Limited Liability Company; AMERICAN DRIVELINE SYSTEMS, INC., a Delaware corporation; and DOES 1-50, <br><br> Defendants. | Case No. 08-CV-03402 SI <br><br> **MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS [F.R.C.P. 12(b)(6)]** <br><br><br><br> Date:        October 31, 2008 <br> Time:        9:00 a.m. <br> Courtroom: 10 (Judge Illston) |

Defendant Cottman Transmission Systems, LLC ("Cottman") hereby submits this

Memorandum in Support of Motion to Compel Arbitration and Motion to Dismiss, as follows:

I.    **ISSUE TO BE DECIDED**

The issue raised by this Motion is:

Are the Plaintiffs obligated by the arbitration provisions in their contracts with Cottman and by the Federal Arbitration Act to arbitrate all of the claims alleged in their Complaint.

Cottman contends that the answer is "yes" because the arbitration provisions are unequivocal in providing that the Plaintiffs must arbitrate "any dispute, controversy or claim or cause of action … arising out of or relating to this Agreement," pursuant to the Federal Arbitration Act.

II.    **FACTS RELATING TO COTTMAN'S MOTION TO COMPEL ARBITRATION**

This is an action by two franchisees of Cottman for damages arising out of the operation of their Cottman franchises in northern California.  Cottman is a franchisor of automotive repair businesses.    On or about April 29, 2005, Cottman entered into a License Agreement with Plaintiff Joseph Bencharsky ("Bencharsky") that permitted him to operate a Cottman automotive repair business in San Rafael, California (the "Bencharsky Agreement").  (William B. Jameson Decl. ("Jameson Decl."), at par. 2, Ex. A )    Contemporaneous with the execution of the Bencharsky Agreement, Bencharsky and Cottman signed an agreement transferring the license to Plaintiff Kund, LLC, with  Bencharsky agreeing to remain personally liable in all respects under the Bencharsky Agreement.  *Id.*    Section 28.a of the Bencharsky Agreement specifically states that any disputes between Cottman and Bencharsky/Kund  will be resolved by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA").  *Id.*   Prior to Bencharsky's  filing of this suit,  Cottman served on  Bencharsky and filed with the AAA a Demand for Arbitration seeking, among other things, the recovery of  over $30,000 in unpaid franchise fees and other fees owed to Cottman pursuant to the Bencharsky Agreement.  (Jameson Decl., at par. 3, Ex. B)

On or about September 14, 2004, Cottman entered into a License Agreement with Plaintiff Joseph Rego ("Rego")  that permitted him to operate a Cottman automotive repair business in

301045046.2

1  Sacramento, California (the "Rego Agreement").  (Jameson Decl., at par. 5, Ex. C)

2  Contemporaneous with the execution of the Rego Agreement,  Rego and Cottman signed an

3  agreement transferring the license to Remach Chaplet, Inc., with  Rego agreeing to remain

4  personally liable in all respects under the Rego Agreement.  (Jameson Decl., at par. 6)  Section

5  28.a of the Rego  Agreement specifically states that any disputes between Cottman and

6  Rego/Remach  will be resolved by binding arbitration in accordance with the Commercial

7  Arbitration Rules of AAA.  (Jameson Decl., at par. 5)

8         On June 25, 2008, Bencharsky and Rego filed this suit in Marin County Superior Court

9  alleging that Cottman, and its affiliated  company American Driveline Systems, Inc. ("ADS"),  are

10  liable for various contract, tort, and statutory claims arising out of the Plaintiffs' operation  of their

11  Cottman franchises.  (Jameson Decl., at par. 8)    Cottman and ADS timely removed the Marin

12  County case to this Court.  (Jameson Decl., at par. 9)

13         This  Motion to Compel Arbitration contends that all of the Plaintiffs'  claims are subject

14  to binding arbitration based upon the arbitration provisions in the Bencharsky Agreement and in

15  the Rego Agreement.  (Jameson Decl., at par. 9)

16

17  **III.    ARGUMENT**

18
      The Federal Arbitration Act, 9 U.S.C.  § 1 *et seq.*  ("FAA") provides in pertinent part:
19
      A written provision in … a contract evidencing a transaction involving commerce
20    to settle by arbitration a controversy thereafter arising out of such contract or
      transaction … shall be valid, irrevocable, and enforceable, save upon such grounds
21    as exist at law or in equity for the revocation of any contract.

22  9 U.S.C. § 2.  The FAA further provides in pertinent part that:

23
      If any suit or proceeding be brought in any of the courts of the United States upon
24    any issue referable to arbitration under an agreement in writing for such arbitration,
      the court in which such suit is pending, upon being satisfied that the issue involved
25    in such suit or proceeding is referable to arbitration under such an agreement, shall
      on application of one of the parties stay the trial of the action until such arbitration
26    has been had in accordance with the terms of the agreement…

27  9 U.S.C.  § 3.

28
      When a court interprets provisions in an agreement covered by the FAA, due regard must

301045046.2

1  be given to federal policy favoring arbitration, and ambiguities as to the scope of the arbitration

2  clause itself are resolved in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*,

3  514 U.S. 52, 62 (1995).   The FAA establishes that, as a matter of federal law, any doubts

4  concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the

5  problem at hand is construction of contract language itself or allegation of waiver, delay or like

6  defense to arbitrability. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460

7  U.S. 1, 24-25 (1983); *Morgan v. Countrywide Home Loans, Inc.,* 2007 U.S.Dist.Lexis 3751

8  (N.D. Cal. 2007).   Upon a showing that a party has failed to comply with a valid arbitration

9  agreement, the district court must issue an order compelling arbitration.   *Akar v. Prescott Hotel,*

10  2008 U.S.Dist.Lexis 43066 (N.D. Cal. 2008), citing *Cohen v. Wedbush, Noble Cooke, Inc.,* 841

11  F.2d 282, 285 (9th Cir. 1988).

12       In the present case, Plaintiffs have entered into franchise agreements with Cottman that

13  require that disputes between Plaintiffs and Cottman are subject to binding arbitration. (Jameson

14  Decl., at pars. 2, 5;  Exs. A, C)   Section 28.a of the Plaintiffs' contracts, entitled "Mandatory

15  Arbitration," provides in pertinent part as follows:

16       COTTMAN and OPERATOR shall attempt to negotiate and settle **any dispute,
      controversy or claim or cause of action (collectively "Dispute") arising out of**
17       **or relating to this Agreement.** In the event the Dispute is not settled through
      negotiation, the parties shall file the dispute with the American Arbitration
18       Association ("AAA") in Philadelphia, Pennsylvania … The arbitration shall be
      conducted pursuant to the then prevailing Commercial Rules of the AAA.  In the
19       event of arbitration, the arbitrator(s) shall have the right to award or include in the
      award any relief which the arbitrator(s) deems proper in the circumstances (other
20       than punitive or exemplary damages), including without limitation, money damages
      (with interest on unpaid amount from the due date), specific performance, and
21       injunctive relief.  The award of the arbitrator(s) shall be the sole and exclusive
      remedy  between  COTTMAN  and  OPERATOR  regarding  any  claims,
22       counterclaims, cross-claims, issues, or accountings ("Claims") presented or pled to
      the arbitrator(s), and shall be made and shall promptly be payable free of any tax
23       deduction, or offset. … COTTMAN and OPERATOR agree that any and all
      Claims in arbitration must, if at all, be asserted and served upon the other party
24       within one (1) year after the occurrence of facts giving rise to such Dispute.

25  (Jameson Decl., at Exs. A, C)(bold added)

26       In blatant disregard of the clear language of the mandatory arbitration provision of their

27  franchise agreements, Plaintiffs have filed and pursued this suit  rather than pursuing their claims

28

301045046.2

1    in arbitration,  as they are contractually obligated to do via mandatory binding arbitration.  *Id.*[1]

2    "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort

3    to the courts." *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984).

4         The Federal Arbitration Act requires courts to enforce agreements to arbitrate just as they

5    would enforce any other contractual provision.  9 U.S.C. §§ 1-4.  The FAA "leaves no place for

6    the exercise of discretion by a district court, but instead mandates that district courts *shall* direct

7    the parties to proceed to arbitration on issues as to which an arbitration agreement has been

8    signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (original emphasis).

9    "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little

10   discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms."

11   *Republic of Nicaragua v. Standard Fruit Co.,*  937 F.2d 469, 475 (9th Cir. 1991); *Akar*, *supra*.

12        Moreover, the Ninth Circuit has held that where, as here, all issues asserted by a party are

13   subject to arbitration and there is nothing left to adjudicate once arbitration is ordered, the Court

14   may dismiss the judicial proceeding rather than simply stay it pending arbitration.  *See, e.g.,*

15   *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming dismissal

16   rather than stay as urged by appellants); *Martin Marietta Aluminum, Inc. v. General Elec. Co*, 586

17   F.2d 143, 147-148 (9th Cir. 1978) (affirming dismissal as arbitration clause barred Plaintiffs'

18   claims); *Akar*, *supra*,  ("Where an 'arbitration clause [is] broad enough to bar all of the plaintiff's

19   claims since it required [the plaintiff] to submit all claims to arbitration,' those claims may be

20   dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)").

21        Finally, there can be no doubt but that Plaintiffs' claims arise out of, or relate to the

22   franchise agreements.    Plaintiffs' claims all derive from the fact that they are franchisees of

23   Cottman.  Although the Plaintiffs' claims are recast in terms of various common law and statutory

24   law theories of liability, all derive from the same essential factual predicate:  alleged fraudulent

25   pre-signing representations made to Plaintiffs as an inducement to sign the franchise agreement.

26   _____

27   [1] Indeed, Joseph Bencharsky already is a party to an arbitration commenced by Cottman.  *See
     Cottman Transmission Systems, LLC and Joseph Bencharsky,* AAA No. 14 114 E 00947 08
     (Philadelphia locale).  The arbitration was submitted to the American Arbitration Association by

28   Cottman on June 19, 2008, several days before this present action was filed by Plaintiffs on June
     25, 2008. (Jameson Decl., at par. 3, Ex. B)

301045046.2

1 | *See* Complaint at paragraphs 20, 21, and 23.

2 | Because all of the claims asserted by the Plaintiffs fall within the mandatory arbitration

3 | provision of their franchise agreements with Cottman, this Court should dismiss the Plaintiffs'

4 | claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-4 and Federal Rule of Civil

5 | Procedure 12(b)(6).

7 | In the alternative and if the Court determines that the Plaintiffs' claims should not be

8 | dismissed, they should be stayed pending arbitration of the claims pursuant to the terms of the

arbitration provision in the franchise agreements.

## IV.    CONCLUSION

For the reasons set forth above, the Court should enter an Order compelling the Plaintiffs

to arbitrate their claims in the American Arbitration Association pursuant to the terms of the

Plaintiffs' franchise agreements and the Federal Arbitration Act, and this case should be dismissed

pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative and if the Court denies

Cottman's motion to dismiss, this case should be stayed pending arbitration of the Plaintiffs'

claims in a AAA arbitration.

DATED: August 15, 2008          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____
    Jeffrey E. Faldrup
    Attorneys for Defendant
    Cottman Transmission Systems, LLC

301045046.2

1   Jeffrey L. Fillerup, State Bar No. 120543
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
2   Rincon Center II, 121 Spear Street, Suite 200
    San Francisco, California 94105-1582
3   Telephone No.: 415.356.4600
    Fax No.: 415.356.4610
4   E-Mail:  jfillerup@luce.com

5   James A. Goniea, State Bar No. 170849
    201 Gibraltar Road
6   Horsham, PA  19044
    Telephone No.: 610.668.2900
7   Fax No.: 610.664.5897
8   E-Mail:  jgoniea@aamco.com

9   Attorneys for Defendant
    Cottman Transmission Systems, LLC
10

11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15

16  JOSEPH BENCHARSKY, an individual;        Case No. 08-CV-03402 SI
    KUND, LLC, a California Limited Liability
17  Company; JOSEPH REGO, an individual;     **DECLARATION OF WILLIAM B.**
    REMACH CHAPLET, INC., California         **JAMESON IN SUPPORT OF MOTION**
18  Corporation,                             **TO COMPEL ARBITRATION AND**
                                             **MOTION TO DISMISS [F.R.C.P.**
19          Plaintiffs,                      **12(b)(6)]**

20  v.

21  COTTMAN TRANSMISSION SYSTEMS,
    LLC, a Delaware Limited Liability Company;
22  AMERICAN DRIVELINE SYSTEMS, INC., a
    Delaware corporation; and DOES 1-50,     Date:       October 31, 2008
23                                           Time:       9:00 a.m.
            Defendants.                      Courtroom: 10 (Judge Ilston)
24

25

26          I, William B. Jameson, declare as follows:

27          1.      I am the General Counsel for defendant Cottman Transmission Systems, LLC

28  ("Cottman").  I have personal knowledge of the facts set forth in this declaration, or have

1  knowledge of these facts by virtue of my access to the books and records of Cottman kept in the

2  ordinary course of Cottman's business. I could testify to the matters set forth in this declaration if

3  called upon to do so.

4          2.      On or about April 29, 2005, Cottman entered into a License Agreement with

5  Plaintiff Joseph Bencharsky that permitted him to operate a Cottman automotive repair business in

6  San Rafael, California (the "Bencharsky Agreement"). A true and correct copy of the Bencharsky

7  Agreement is attached hereto as Exhibit "A". Section 28.a of the Bencharsky Agreement

8  specifically states that any disputes between Cottman and Bencharsky will be resolved by binding

9  arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration

10 Association ("AAA"). Contemporaneous with the execution of the Bencharsky Agreement,

11 Joseph Bencharsky and Cottman signed an agreement transferring the license to Kund, LLC, with

12 Joseph Bencharsky agreeing to remain personally liable in all respects under the Bencharsky

13 Agreement. See, Exhibit "A"

14         3.      Prior to Bencharsky's filing of this suit, Cottman served on Joseph Bencharsky and

15 filed with the AAA a Demand for Arbitration seeking, among other things, the recovery from

16 Bencharsky of over $30,000 in unpaid franchise fees and other fees owed to Cottman pursuant to

17 the Bencharsky Agreement. Cottman's Demand for Arbitration is attached hereto as Exhibit "B".

18 After Cottman served Bencharsky with the Demand for Arbitration, Bencharsky filed this suit.

19         4.      This declaration is submitted in support of Cottman's Motion to Compel

20 Arbitration seeking an order requiring Bencharsky to pursue his claims in the AAA arbitration in

21 Pennsylvania, which is required by the Bencharsky Agreement, and which has already been

22 initiated by Cottman.

23         5.      On or about September 14, 2004, Cottman entered into a License Agreement with

24 Plaintiff Joseph Rego that permitted him to operate a Cottman automotive repair business in

25 Sacramento, California (the "Rego Agreement"). A true and correct copy of the Rego Agreement

26 is attached hereto as Exhibit "C". Section 28.a of the Rego Agreement specifically states that any

27 disputes between Cottman and Rego will be resolved by binding arbitration in the Philadelphia

28 office of AAA and in accordance with AAA's Commercial Arbitration Rules.

1   6.  Contemporaneous with the execution of the Rego Agreement, Joseph Rego and

2 Cottman signed an agreement transferring the license to Remach Chaplet, Inc., with Joseph Rego

3 agreeing to remain personally liable in all respects under the Rego Agreement.  See Exhibit "C".

4   7.  This declaration is submitted in support of Cottman's Motion to Compel

5 Arbitration, which seeks an order requiring Rego to pursue his claims in a AAA arbitration in

6 Philadelphia, Pennsylvania.

7   8.  On or about June 25, 2008, Bencharsky and Rego filed this suit in Marin County

8 Superior Court alleging that Cottman, and its indirect corporate parent American Driveline

9 Systems, Inc. ("ADS"), are liable for various contract, tort, and statutory claims arising out of the

10 Plaintiffs' operation  of their Cottman franchises.

11   9.  Cottman and ADS timely removed the Marin County case to this Court, and

12 Cottman then filed this Motion to Compel Arbitration because the Bencharsky Agreement and the

13 Rego Agreement require that each Plaintiff  pursue their claims in this case in a AAA arbitration

14 in Philadelphia.

15   I declare under penalty of perjury under the laws of the State of California that the above is

16 true and correct.  Executed this 15th day of August, 2008 at Horsham, Pennsylvania.

WILLIAM B. JAMESON

17

18

19

20

21

22

23

24

25

26

27

28

301045234.1010451
86.1            3       Case No. CV-03402 SI
                      DECLARATION OF WILL JAMESON

# EXHIBIT A



# LICENSE AGREEMENT

TABLE OF CONTENTS

|  | Background | 1 |
|---|---|---|
| Section 1. | Grant of License | 1 |
| Section 2. | Term | 2 |
| Section 3. | Location and Lease | 2 |
| Section 4. | Training and Commencement of Business | 3 |
| Section 5. | Services Rendered by COTTMAN | 4 |
| Section 6. | Operator's Manual | 4 |
| Section 7. | Certain Obligations of OPERATOR | 5 |
| Section 8. | Continuing License Fees | 6 |
| Section 9. | Advertising | 7 |
| Section 10. | Insurance | 8 |
| Section 11. | COTTMAN Names and Marks and Trade Secrets | 8 |
| Section 12. | Protection of SYSTEM | 9 |
| Section 13. | Customer Warranties | 9 |
| Section 14. | Telephone Service | 9 |
| Section 15. | Signs | 9 |
| Section 16. | National Fleet Accounts | 10 |
| Section 17. | Restrictions on Change of Ownership | 10 |
| Section 18. | Relationship of the Parties; Indemnification | 12 |
| Section 19. | Termination | 12 |
| Section 20. | Effect of Termination | 13 |
| Section 21. | Covenant Not to Compete | 14 |
| Section 22. | Expenses | 15 |
| Section 23. | Waiver | 15 |
| Section 24. | Successors | 16 |
| Section 25. | Notice | 16 |
| Section 26. | Risk of Operations | 16 |
| Section 27. | Severability | 16 |
| Section 28. | Dispute Resolution | 16 |
| Section 29. | Controlling Law | 17 |
| Section 30. | JURY WAIVER | 17 |
| Section 31. | Entire Agreement | 17 |



☐ **New**          ☐ **Conversion**
☐ **Elite**        ☐ **Champion**

# License Agreement

AGREEMENT made   April 29, 2005, between COTTMAN TRANSMISSION SYSTEMS, LLC, 201 Gibraltar Road, Suite 150, Horsham, Pennsylvania 19044 (hereinafter called "COTTMAN"), and

Joseph Bencharsky
503 Palma Way
Mill Valley, CA 94941

(hereinafter called "OPERATOR")

As a result of extensive experience in the automotive transmission business, COTTMAN has developed and perfected certain methods, procedures and techniques of repairing, remanufacturing and servicing transmissions; and

COTTMAN has developed a system (hereinafter called the "SYSTEM") for conducting operations in the automotive transmission business which consists, in part, of the use of the Cottman name, Cottman's methods, procedures and techniques, and a network of Centers devoted exclusively to the repair of automotive transmissions (hereinafter called "CENTERS") which use the Cottman name and said methods, procedures and techniques; and

COTTMAN has created a substantial demand for its products and services by maintaining high standards of quality in its operations and in the operations of its licensed CENTERS and by extensive advertising; and

COTTMAN is actively engaged in promoting and expanding the reputation and good will of the name COTTMAN in connection with the automotive transmission business; and

In recognition of the value of participating in the SYSTEM, OPERATOR desires to acquire a license to operate a CENTER;

THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound, the parties agree as follows:

1.      Grant of License.

a. In consideration of the payment of the initial fees, as set forth in Appendix A attached hereto and made a part hereof, OPERATOR shall have the right, subject to the terms and conditions set forth in this Agreement, to operate a CENTER (hereinafter called "the CENTER"), under the Cottman name and under any other trade names, trademarks, service marks and logos (hereinafter called "Cottman names and marks") presently used, or which may hereafter be used in the SYSTEM;

b. Operator's Center shall be located within the following area:

California

S.M.S.A./COUNTY

The Center may not be relocated without the express prior written approval of Cottman, which approval shall not be unreasonably withheld.

      i. Cottman reserves the right to establish other Centers within the same Standard Metropolitan Statistical Area or County. The number of Centers, however, shall not exceed one Center for each 50,000 motor vehicle registrations in the above named area. In areas which are not designated within a statistical metropolitan area, Cottman shall not establish another Center within a three mile radius of the OPERATOR's Center.

      c.  OPERATOR acknowledges that Cottman shall incur expenses upon execution of this Agreement, and in the event of any termination or cancellation of this Agreement for any reason whatsoever, COTTMAN in addition to any other rights or remedies it may have shall be entitled to retain the entire initial license fee as liquidated damages.

      2.  Term.

      This Agreement shall be for an initial term of fifteen (15) years. Provided OPERATOR is not then in default under this Agreement, OPERATOR shall have the right to renew this Agreement at the end of the initial term or any renewal term for an additional fifteen year term by executing, at least ninety days, but not more than one year, before the expiration of the then current term, COTTMAN's then current standard License Agreement. There shall be no additional initial license fee payable upon renewal. The rate of continuing license fee, as described in Section 8, to be paid by OPERATOR to COTTMAN during any renewal period shall not be more than the rate of continuing license fee payable under the then expiring agreement unless during the term of the then expiring agreement the laws and other rules and regulations under which COTTMAN operates have been modified to require COTTMAN to provide additional goods or services to OPERATOR or to otherwise increase COTTMAN's cost of operating or unless COTTMAN is, in fact, providing additional goods or services to OPERATOR. If, at least ninety days before the expiration of the then current term of this Agreement, OPERATOR has not executed COTTMAN's then current standard License Agreement, this Agreement shall automatically terminate at the end of the term without further action by either party. Anything contained in this section 2 to the contrary notwithstanding the initial term of this Agreement and all renewal terms shall be subject to the other provisions of this Agreement relating to termination.

      3.  Location and Lease.

      a.  This paragraph shall apply to New, Elite and Conversion Licensees.  Upon the execution of this Agreement, OPERATOR shall proceed with due diligence to secure a location for the CENTER within the Standard Metropolitan Statistical Area or County stated in Section 1.b. of this Agreement, in accordance with the guidelines set forth in COTTMAN's Center Opening Procedures Manual.  In the event OPERATOR fails to open his CENTER for business within one year from the date of execution hereof, COTTMAN, in its sole discretion, and absent any extension of time agreed to in writing by COTTMAN, may immediately and without prior notice, cancel and terminate this Agreement.

      b. This paragraph shall apply to Champion License Agreements.  Upon the execution of this Agreement, OPERATOR shall proceed with due diligence to secure a location for the CENTER within the Standard Metropolitan Statistical Area or County stated in Section 1.b. of this Agreement, in accordance with the guidelines set forth in COTTMAN's Center Opening Procedures Manual.  In the event such a location is not secured within six months from the date of this Agreement, COTTMAN in its sole discretion, and absent any extension of time agreed to in writing by COTTMAN, may immediately and without prior notice, cancel and terminate this Agreement.

      c.  OPERATOR shall not execute any documents of purchase or lease for any such location without the prior written approval of COTTMAN as to location and terms of sale in the event of purchase, or as to the lease and location in the event of lease.

      d.  In the event OPERATOR purchases the CENTER location at any time during the term of this Agreement, or is the owner of the Center location before the execution of this AGREEMENT, OPERATOR does hereby grant to COTTMAN the option to lease the said location on substantially the same terms and

conditions contained in any lease under which OPERATOR occupied the location as lessee, or if no such lease existed, then on terms and conditions which are commercially reasonable. The option herein granted may be exercised by COTTMAN for a period of thirty (30) days following the termination of this Agreement for any reason whatsoever.

e. In the event of lease, upon COTTMAN's written approval of the proposed location and lease, OPERATOR shall execute the lease and deliver a copy of the fully executed lease to COTTMAN. The lease shall contain a conditional assignment clause which shall provide that upon the termination of this Agreement, for any reason whatsoever, COTTMAN or its designee shall have the option for thirty days to assume the obligations of and to replace OPERATOR as the lessee under said lease and at any time thereafter reassign the lease to a new OPERATOR. OPERATOR agrees not to terminate, renew or in any way alter or amend such lease during the term thereof, or any renewal term thereof, without COTTMAN's prior written consent, and any attempted termination, renewal, alteration or amendment shall be null and void and have no effect as to COTTMAN or COTTMAN's interests.

f. Except as otherwise provided in this Agreement, OPERATOR shall not assign its lease or sublet the CENTER, or any portion of the premises containing the CENTER.

g. In the event OPERATOR chooses to design and construct his CENTER, OPERATOR shall engage COTTMAN's designated design and construction professional or, alternatively, procure design and construction services from another source approved by COTTMAN in writing and provided OPERATOR pays for and submits to a compliance audit by COTTMAN's designated design professional to assure compliance with COTTMAN's standards.

4. Training, Warranty Deposit and Commencement of Business.

a. Before opening the CENTER for business, OPERATOR shall attend COTTMAN's training program and complete the course to COTTMAN's satisfaction. During the training program, OPERATOR shall receive instruction, training and education in the operation of the CENTER. In the event OPERATOR fails to complete training to COTTMAN's satisfaction, COTTMAN, in its sole discretion, may terminate this Agreement immediately, and this Agreement shall be of no further force and effect, and neither COTTMAN nor OPERATOR shall have any further liability or obligation to the other, provided however, that the provisions of paragraphs 20 and 21 hereof shall not be affected by any such termination.

b. OPERATOR shall attend such additional training programs or meetings at such locations as COTTMAN may from time to time direct. All expenses of OPERATOR incurred in connection with attendance at training programs or sales meetings other than the initial training program shall be borne solely by OPERATOR.

c. OPERATOR shall maintain at all times during the term of this Agreement or any renewal thereof, a staff of trained employees sufficient to operate the CENTER in accordance with this Agreement. OPERATOR shall not employ any person who may be required by COTTMAN to complete a training program but who fails to do so for any reason whatsoever.

d. OPERATOR acknowledges and agrees that he has deposited the sum of Five thousand dollars ($5,000.00) with COTTMAN as a customer warranty deposit, which warranty deposit shall be held by COTTMAN as security for compliance of OPERATOR's customer warranty obligations under this Agreement. OPERATOR understands that the warranty deposit is a condition to this Agreement and authorizes COTTMAN, using its sole discretion, to administer the warranty deposit in accordance with the requirements of this section of the Agreement.

e. The warranty deposit shall be interest bearing at the legal rate of interest for the Commonwealth of Pennsylvania. Accrued interest shall be credited into the OPERATOR's warranty deposit account. COTTMAN shall have no obligation to establish a separate bank account for such funds.

f. The warranty deposit shall be reimbursed to OPERATOR upon termination of this Agreement if the CENTER is sold by OPERATOR (with COTTMAN's prior written consent in accordance with section 17 of this Agreement) and the new franchisee assumes OPERATOR's warranty obligations and deposits a new warranty deposit with COTTMAN. In all other situations where this Agreement is terminated, the warranty deposit shall be administered as follows: I) COTTMAN, may expend the warranty deposit as needed to cover the costs of warranty work arising from warranties issued by the CENTER before the termination of this Agreement; and ii) COTTMAN shall retain the warranty deposit for a period of five (5) years from the date of termination of this Agreement, at which time any remaining balance will be returned to OPERATOR provided OPERATOR has complied fully with sections 18, 20 and 21 of this Agreement.

g.    All warranty repairs charged ;under paragraph 4.f. shall be performed at COTTMAN's then current Inter Center Warranty rate if performed at another Cottman Center.  If no Cottman Center is available to perform the warranty work COTTMAN shall have the work completed at another authorized facility and charge such cost to OPERATOR.

5.  Services Rendered by COTTMAN.

COTTMAN agrees to:

a. assist OPERATOR in obtaining a location and negotiating a lease;

b. assist OPERATOR with the layout of the CENTER and the installation of equipment;

c. assist OPERATOR in finding and evaluating personnel;

d.  furnish to OPERATOR the Operator's Manual described in section 6, parts catalogs, and instructional and training materials for the purpose of providing guidance in the methods, procedures and techniques of operating a CENTER;

e.  furnish from time to time such business information and literature as COTTMAN determines may be helpful in improving the operations of the CENTER;

f.  advise and consult with OPERATOR during normal business hours on matters relating to all operations of the CENTER;

g.  advise OPERATOR of new developments and improvements in the SYSTEM and to offer to OPERATOR services, facilities, rights and privileges substantially similar to those generally offered to other licensed participants in the SYSTEM;

h.  provide initial training and additional training programs and meetings; and

i.  continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks and other distinguishing aspects of the SYSTEM.

6.  Operator's Manual.

a.  COTTMAN shall lend to OPERATOR a manual published by COTTMAN (herein called the "Operator's Manual") which includes, in part, the business procedures, technical advice and rules and regulations for the operation of the CENTER.

b.  OPERATOR acknowledges and agrees that:

i. the Operator's Manual is the property of COTTMAN and shall remain its property during the term of this Agreement and any renewal hereof;

ii. the Operator's Manual contains confidential information which OPERATOR will protect as a trade secret, and that its loss will cause substantial damage to COTTMAN and the SYSTEM although the amount of such loss would be incalculable with any degree of accuracy. Consequently, in the event of loss of this Manual, OPERATOR agrees to pay to COTTMAN such sum as may be agreed upon for its replacement, as liquidated damages and not as a penalty;

iii. OPERATOR will not reprint or reproduce any portion of the Operator's Manual for any reason whatsoever;

iv. upon termination of this Agreement for any reason the Operator's Manual will be immediately returned to COTTMAN.

c.  COTTMAN may add to or otherwise modify the Operator's Manual, from time to time, whenever COTTMAN considers such additions or modifications desirable to improve or maintain the standards of the SYSTEM and the efficient operation thereof, or to protect or maintain the good will associated with the Cottman names and marks or to meet competition.

d. From the date of the opening of the Center by OPERATOR, the provisions of the Operator's Manual as modified from time to time and the mandatory specifications, standards and operating procedures prescribed by COTTMAN and communicated to OPERATOR in writing, shall constitute provisions of this Agreement as if fully set forth herein. All references herein to this Agreement shall include the provisions of the Operator's Manual and all such mandatory specifications, standards and operating procedures.

7. Certain Obligations of OPERATOR.

In order to maintain the high quality and uniform standards associated with the SYSTEM and to protect its good will and reputation, OPERATOR agrees to:

a. deal fairly and honestly with the public or with COTTMAN;

b. honor and comply with the terms of all advertising placed by or at the direction of COTTMAN or OPERATOR;

c. devote his best efforts and full and exclusive time to the day-to-day operations and development of the license and the business of the CENTER;

d. operate the CENTER exclusively as an automotive transmission business and engage in no other type of business at the CENTER;

e. keep the CENTER open for business the minimum number of days per week and hours per day prescribed by COTTMAN from time to time;

f. design, keep and maintain the CENTER and its appearance in an attractive, clean and orderly manner consistent with the operation of a first class automotive business and the directives of COTTMAN deemed by it to be necessary to protect the standards of quality and uniformity of the CENTERS and the SYSTEM, including (i) interior and exterior painting and décor, (ii) shop and sales office layout and character of interior furnishings, and (iii) use and display of such signs, emblems, logos, lettering and pictorial materials as prescribed by COTTMAN;

g. operate the CENTER in accordance with the methods, procedures and techniques included in the Operator's Manual as modified from time to time or otherwise directed or approved by COTTMAN;

h. comply at all times with all federal, state, provincial, county, city and other local laws, regulations and ordinances;

i. maintain at all times (except when fire or other casualty so prevents) sufficient supplies and personnel to operate the CENTER at maximum capacity and efficiency including a full time CENTER manager (other than OPERATOR) who is primarily responsible for customer contact within the CENTER, and who has successfully completed COTTMAN's Manager's training program;

j. register the fictitious name "Cottman Transmission Center" in accordance with applicable local, state or provincial laws and operate the CENTER under the name COTTMAN and under no other name, and use and display the Cottman names and marks prominently in such manner as may from time to time be directed in writing by COTTMAN and not use or prominently display any other trade name, trademark, service mark or other designation during the term of this Agreement;

k. permit COTTMAN during business hours to inspect the premises of the CENTER, confer with OPERATOR and OPERATOR's employees and customers, check inventories, methods, books and records, and perform any other inspection deemed by COTTMAN to be necessary to protect the standards of quality and uniformity of the SYSTEM and OPERATOR's performance under this Agreement;

l. submit to COTTMAN uniform reports and financial statements in accordance with the procedure set forth in the Operator's Manual, and deliver a copy of OPERATOR's federal income tax return relating to the operations of the CENTER within thirty days after such return is filed. In the event COTTMAN adopts as part of the SYSTEM a format of reporting vial electronic polling, OPERATOR agrees to submit his uniform reports through the internet or other electronic means which is compatible with software utilized by COTTMAN for such purposes;

m. maintain a system of bookkeeping and record keeping approved by COTTMAN, keep his books and records at the CENTER at all times and make them available during business hours to authorized representatives of COTTMAN for the purpose of verifying the accuracy of OPERATOR's reports. If such verification reveals that the gross receipts reported by OPERATOR to COTTMAN are more than two (2%) percent less than OPERATOR's actual gross receipts, OPERATOR shall reimburse COTTMAN for all expenses connected with such verification, including, but not limited to, reasonable accounting and legal fees, and without limitation to any other rights and remedies Cottman in its sole discretion may elect to pursue, OPERATOR shall pay to COTTMAN immediately any delinquent license fees, together with interest at the rate of eighteen percent (18%) [or the maximum rate of interest allowed by law if less than eighteen percent (18%)] per year, calculated from the date when such license fees should have been paid to the date of actual payment;

n. use only numerically consecutive repair orders provided by COTTMAN, for which COTTMAN may make a reasonable charge;

o. purchase all equipment, parts, and other supplies from COTTMAN or suppliers approved by COTTMAN, or from other suppliers whose parts and supplies conform to original equipment manufacturers' specifications or to the minimum standards of quality, performance and uniformity established from time to time by COTTMAN.

p. participate in the national fleet accounts program as hereinafter described in section 16.a. of this Agreement;

q. pay the continuing license fee and all other fees and/or charges arising under this Agreement, via electronic funds transfer as hereinafter described in section 8. of this Agreement; and

r. periodically upgrade and/or remodel the CENTER as COTTMAN may from time to time deem necessary to promote the standards of quality and uniformity of the CENTERS and the SYSTEM, including replacing and/or upgrading exterior and interior signs and décor, provided no such upgrading or remodeling during the Term will require any increase in the square footage of the CENTER premises. No substantial upgrades or remodeling (i.e. in excess of $7,500.00) shall be required more than once every six years during the Term or involve a capital cost of more than $15,000.00 per occurrence during the Term. OPERATOR shall not make any material change to the CENTER premises or adjacent areas without the prior written consent of COTTMAN.

8. Continuing License Fees.

a. During the term of this Agreement, OPERATOR shall pay to COTTMAN a continuing license fee (the "continuing license fee") equal to seven and one-half (7 1/2%) percent of the gross business transacted by OPERATOR (as used in this section, the term "gross business" shall include all work completed and delivered to customers of the CENTER, exclusive of sales tax). The continuing license fee shall be paid weekly on each Tuesday based upon gross business transacted during the preceding calendar week. The continuing license fee shall be remitted simultaneously together with a report showing the computation thereof upon forms or in a format, provided by COTTMAN. COTTMAN may, in its sole discretion, require OPERATOR to submit the reports via electronic polling from OPERATOR to COTTMAN through the internet or other electronic means which is compatible with software utilized by COTTMAN for such purpose.

b. The continuing license fee, and all other fees and/or charges arising under this Agreement, shall be remitted to COTTMAN via electronic funds transfer ("EFT") from the designated account(s) of OPERATOR's financial institution. Before opening his/her CENTER, and from time to time thereafter as events may require, OPERATOR shall provide COTTMAN written authorization, and such other information as COTTMAN may require, in such form as shall be approved by COTTMAN, which shall authorize/enable OPERATOR's financial institution to accept debit originations, electronic debit entries, or other EFT, and electronically deposit fees and contributions owing COTTMAN directly to COTTMAN's bank account(s).

c. OPERATOR authorizes COTTMAN to withdraw funds by EFT upon or after the said funds become due to COTTMAN under this Agreement, at such days and times as COTTMAN shall, in its sold discretion, determine. It shall be a non curable event of default under Section 19 of this Agreement if OPERATOR closes or otherwise makes OPERATOR's designated account non accessible by COTTMAN without completing the following before or promptly after the account is made non accessible:

i. notifying COTTMAN in wiring of such event;

ii. establishing another designated account for EFT withdraws; and

iii. providing the written authorization and information required in sub section b. above.

d. In the event COTTMAN has not received by 12 noon (EST) Tuesday a report of sales from OPERATOR for the gross business transacted during the preceding week via (i) written statements/written business reports in the form stipulated by COTTMAN under section 8. of this Agreement, and/or (ii) by electronic polling, then COTTMAN shall be entitled to withdraw by EFT from OPERATOR's designated account(s) the appropriate continuing license fee based on an arithmetic average of OPERATOR's weekly gross sales reported to COTTMAN over a number of previous weeks determined by COTTMAN in its sole discretion or based in some other means of estimating OPERATOR's gross sales determined by COTTMAN in its sole discretion. If a gross sales report in the form of a statement required under this section 8. is subsequently received and reflects (i) that the actual amount of the continuing license fee due was more than the amount of the EFT by COTTMAN, then COTTMAN shall be entitled to additional funds via EFT from OPERATOR's designated account(s) for the difference or (ii) that the actual amount of the royalty and advertising contribution due was less than the amount of the EFT by COTTMAN, then COTTMAN shall credit the excess amount to the payment of OPERATOR's future continuing license fee.

e. Upon written notice by COTTMAN to OPERATOR, OPERATOR may be required to pay any amount(s) due under this agreement directly to COTTMAN by check or other non-electronic means in lieu of EFT at COTTMAN's sole discretion.

9. Advertising.

a. During the term of this Agreement, OPERATOR shall pay to COTTMAN a continuing advertising fee (the "continuing advertising fee") in the amount of Seven hundred thirty dollars ($730.00) per week or such other adjusted amount as may be determined from time to time pursuant to Section 9.d. of this agreement payable at the same time and in the same manner (i.e., via EFT) as set forth in Section 8 of this Agreement.

b. The continuing advertising fee shall not be used for general operating expenses of COTTMAN, but shall be used and expended for media costs, commissions, fees, production costs, development costs, and other costs of all advertising which is published, broadcast, displayed, or otherwise disseminated, including via any electronic means such as the internet or telephone, either during the calendar year within which such continuing advertising fee is received by COTTMAN or during the immediately succeeding calendar year. COTTMAN may, in its sole discretion, suspend the placement of advertising for OPERATOR if any payments due COTTMAN under this Agreement or any other agreement in effect between the parties are not paid the date upon which the payments are due. The suspension in advertising may continue until OPERATOR has paid current all monies owed COTTMAN. OPERATOR is not relieved of any obligation to make continuing advertising fee payments during the term of any suspension. In the event advertising is suspended, COTTMAN, in its sole discretion, may apply advertising fees paid during the period of suspension toward any late fees, claims, invoices or other monies owed COTTMAN from OPERATOR. During the term of any suspension OPERATOR shall be prohibited from placing advertising pursuant to paragraph 9.e.

c. All decisions from time to time regarding whether to utilize national, regional, or local advertising, or some combination thereof, and all decisions regarding selecting of the particular media, including electronic media such as the internet, and advertising content, shall be within the sole discretion of COTTMAN and such agencies or others as it may appoint, provided however, that except for those amounts utilized for national advertising or as set forth in section 9. b. above, all monies actually received from OPERATOR shall be spent for the local or regional market area of the CENTER.

d. The continuing advertising fee may be adjusted from time to time either nationally or by region or market area in Cottman's sole discretion, provided, however, no such adjustment shall exceed five percent (5%) in any calendar year, and provided further that no adjustment shall be deemed retroactive to any prior year.

e. Provided OPERATOR's advertising is not suspended by Cottman, nothing herein shall be deemed to prohibit OPERATOR from engaging in any advertising or promotion of his CENTER or business, in addition to the advertising or promotion paid for by COTTMAN. Provided such advertising or promotion shall be at the sole cost of OPERATOR and without deduction or credit against any fees or other monies owed by OPERATOR to COTTMAN, and shall be subject to the provisions of section 9.f. of this Agreement, except that under no circumstances shall OPERATOR (1) create, maintain or use a website or other form of electronic media not paid for or approved in writing by COTTMAN for the purpose of advertising or promoting his CENTER or business; (2) create or adopt any domain name utilizing in any way the Cottman names and marks; and (3) establish any HTML or other link between any website created, maintained or used by OPERATOR and COTTMAN's home page(s) or other part of its website(s);

f. OPERATOR shall not use, display, publish, broadcast, or in any manner disseminate any advertising or promotional material unless the same has been first approved in writing by COTTMAN. In the event that COTTMAN from time to time furnishes to OPERATOR any advertising, promotional or informational materials to be used, displayed, or distributed in or about CENTER, OPERATOR agrees to follow the instructions of COTTMAN in connection therewith; and

g. In accordance with section 9.c. of this Agreement, COTTMAN may from time to time designate a COTTMAN website for the purpose of advertising the COTTMAN names and marks and services associated with the SYSTEM as well as individual CENTERS. OPERATOR acknowledges that all parts of the designated website, including any web page(s) dedicated to his CENTER, are the property of COTTMAN and that COTTMAN has sole and exclusive right and authority to change or terminate the website in total or in part as COTTMAN, in its sole discretion, deems appropriate.

10. Insurance.

a. OPERATOR shall purchase and at all times during the term of this Agreement shall maintain in full force and effect policies of insurance as follows:

i. Workmen's Compensation insurance, in amounts prescribed by law;

ii. insurance against all types of public liability including employer's liability insurance, liability insurance under either a comprehensive general liability policy or an occurrence basis or a garage liability policy, with bodily injury and property damage liability insurance, products liability or completed operations liability insurance, automobile liability insurance, including owned and non-owned hired cars, trucks, trailers and other motor vehicles, and customer automobile liability insurance; Automobile Insurance (suggested minimum policy limits: bodily injury liability $300,000.00 per person, $500,000.00 per occurrence, and $100,000.00 property damage liability); Garage Liability Insurance (suggested minimum policy limits: bodily injury liability $300,000.00 per person, $500,000.00 per occurrence, and $100,000.00 property damage liability);

iii. such additional insurance as may be required by the terms of any lease for the premises of the CENTER.

b. All policies of insurance required under this section shall be in form and in such amounts as COTTMAN shall reasonably determine with companies reasonably satisfactory to COTTMAN and shall protect, as named insureds, OPERATOR, COTTMAN and any other party designated by COTTMAN. All such policies shall contain an endorsement which provides that only actual notice to insured, if an individual, or to any executive officer of insured, if a corporation, shall constitute knowledge of the insured. OPERATOR shall furnish COTTMAN, any other named insured, and all other persons designated by COTTMAN, certificates issued by each of OPERATOR's insurers indicating that all required insurance is in full force and effect and will not be terminated or changed without at least thirty days prior written notice from the insurer to each certificate holder. New certificates evidencing renewal of such insurance shall be furnished at least thirty days before the date of expiration of each such policy. Within five days of any request by COTTMAN, OPERATOR shall deliver the original of all such insurance policies to COTTMAN for examination.

c. If OPERATOR fails to obtain or maintain any insurance policy containing all the coverages, clauses and provisions required under this section, COTTMAN may, at its election, obtain and maintain said insurance for and in the name of OPERATOR. Within fifteen days of any written request of COTTMAN, OPERATOR shall furnish all information necessary to obtain and maintain such insurance and shall pay all costs thereof.

11. COTTMAN Names and Marks and Trade Secrets.

a. OPERATOR hereby acknowledges the validity of the Cottman names and marks and that COTTMAN is the owner of all right, title and interest therein. OPERATOR agrees that he will use the COTTMAN names and marks in full compliance with specifications prescribed from time to time by COTTMAN and that all such usage and the good will established thereby shall inure to the exclusive benefit of COTTMAN.

b. OPERATOR represents and warrants that:

i. he will not contest, directly or indirectly, COTTMAN's ownership, title, right or interest in the Cottman names and marks, trade secrets, methods, procedures and techniques which are a part of the SYSTEM or contest COTTMAN's sole right to register, to use, and to license others to use such COTTMAN names and marks, trade secrets, methods, procedures and techniques and any other mark or name which incorporates the word "Cottman";

ii. with the exception of the use of the names and marks in the manner expressly specified and authorized under this Agreement and the registration of a fictitious name solely in connection with the operation of the CENTER, he will not use or register or attempt to use or register in OPERATOR's name or in the

name of any other person or entity any name or mark, corporate name or any designation of any kind utilizing the COTTMAN names and marks, or any other materials or electronically transmitted information used in the SYSTEM; and

iii. he will not disclose to any person or entity except in the ordinary course of business, any data or information contained in the Operator's Manual and he will keep and maintain such data and information and other materials furnished to OPERATOR by COTTMAN as trade secrets.

c. OPERATOR shall not:

i. create, maintain or use a website or other form of electronic media not provided or approved in writing by COTTMAN in accordance with this Agreement containing any COTTMAN names or marks;

ii. create or adopt any domain name utilizing in any way the COTTMAN names or marks; or

iii. establish any HTML or other link between any website created, maintained or used by OPERATOR and COTTMAN's home pages(s) or other part of its website(s).

12. Protection of SYSTEM.

If OPERATOR learns of any actual or threatened infringement or piracy of the Cottman names and marks, trade secrets, methods, procedures or techniques used in the SYSTEM (the "Infringement") or of any infringement or piracy claim made against OPERATOR by a party other than COTTMAN ("Third Party Claim"), OPERATOR shall immediately notify COTTMAN in writing of the Infringement or Third Party Claim. COTTMAN shall in the exercise of its sole discretion determine what action, if any, to take with respect to the foregoing and shall bear the expense of any such action. OPERATOR agrees to be named party and to give his full cooperation in such action if so requested by COTTMAN. If OPERATOR is named as a party in any legal proceeding brought by a party other than COTTMAN for infringement of trade names, trademarks, service marks, copyrights or trade secrets, based upon OPERATOR's use of the Cottman names and marks, any such proceeding shall be defended in the name of OPERATOR by and at the expense of COTTMAN.

13. Customer Warranties.

OPERATOR recognizes that it is in the mutual best interest of OPERATOR and other operators participating in the SYSTEM for COTTMAN to establish uniform guarantees and warranties for labor and parts throughout the SYSTEM. OPERATOR therefore agrees to offer customers of the CENTER such guarantees and warranties as may from time to time be prescribed by COTTMAN, and no others, and to honor customer complaints made within the applicable guarantee or warranty period arising from work performed at any other CENTER. OPERATOR acknowledges that such guarantees and warranties are made to the customer by OPERATOR and not by COTTMAN, and that COTTMAN shall not be responsible for reimbursing any CENTER for work performed by any other CENTER. OPERATOR shall be entitled to be reimbursed by the operator of the CENTER which originally guaranteed or warranted the work for the cost of any automotive supplies, accessories, replacement parts and labor performed in satisfaction of such guarantee or warranty. OPERATOR shall fully comply with all of the policies and procedures concerning intercenter warranties as set forth from time to time in the Operator's Manual, as referred to in section 6 of this Agreement.

14. Telephone Service.

OPERATOR acknowledges that all telephone numbers and directory listings for the CENTER are the property of COTTMAN and that COTTMAN has the sole and exclusive right and authority to transfer, terminate and amend such telephone numbers and directory listings as COTTMAN, in its sole discretion, deems appropriate. In the event COTTMAN takes any action pursuant to this section 14, the telephone company and all listing agencies, without liability to OPERATOR may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

15. Signs.

OPERATOR shall erect outside and inside signs of such size and construction as directed by COTTMAN. No other signs may be erected or used. OPERATOR acknowledges and agrees that COTTMAN shall have exclusive control of the use and display of all sign faces bearing the Cottman name or marks.

16. National Fleet Accounts.

a.    COTTMAN, as part of the SYSTEM, maintains various national/regional fleet accounts through a centralized billing system and provides transmission related repairs to the fleet accounts at COTTMAN designated locations at certain agreed prices ("national fleet accounts program"). OPERATOR agrees to participate in COTTMAN's national fleet accounts program or similar program(s) for as long as COTTMAN may offer the said program(s) during the term of this Agreement.

b.    COTTMAN may, from time to time and in its sole discretion, designate OPERATOR's CENTER to receive a particular vehicle under the national fleet accounts program. In such event, OPERATOR agrees to:

i.    accept and perform any transmission related repair work that the vehicle may require in accordance with COTTMAN published service grades;

ii.    offer and honor such warranties as are required under COTTMAN's agreement with the fleet account;

iii.    charge and accept payment for all repairs in accordance with the price agreed between COTTMAN and the fleet account for the particular type of repair, and not charge any additional fee to the end user;

iv.    complete and provide such data, reports and/or documentation as COTTMAN may require in administering the national fleet accounts program;

v.    pay to COTTMAN a one percent (1%) administrative fee from the total price of each fleet account repair; and

vi.    purchase and/or subscribe to any necessary hardware or software to interface with COTTMAN's centralized billing system.

c.    OPERATOR shall submit his/her billing information for all fleet account repairs through COTTMAN, who will issue payment to OPERATOR within five business days of receipt of the payment from the fleet account. Payment to OPERATOR is contingent on payment from the fleet account; COTTMAN is not a guarantor of such payment. Payments issued to OPERATOR from COTTMAN will be net of the continuing license fee, the administrative fee and any fleet account rebill ALLOWANCE. Further, COTTMAN may, in its sole discretion, apply the payment in whole or in part against any outstanding and unpaid continuing license fees, continuing advertising fees, claims, inter-center warranty charges, invoices or other monies owed COTTMAN from OPERATOR.

d.    The administrative fee may be adjusted from time to time in COTTMAN's sole discretion, provided, however, no such adjustment shall exceed five percent (5%) of the price of the repair.

e.    COTTMAN retains all rights to the software used in connection with the national fleet accounts program. OPERATOR shall not directly or indirectly solicit the business of COTTMAN's fleet accounts.

f.    Any charge back from a fleet account to COTTMAN for a repair performed by OPERATOR shall be paid by OPERATOR to COTTMAN within ten days of demand from COTTMAN.

17. Restrictions on Change of Ownership.

a.    All rights and interests of OPERATOR arising from this Agreement are personal to OPERATOR and except as otherwise provided in this section 16, OPERATOR shall not, without COTTMAN's prior written consent, voluntarily or involuntarily, by operation of law or otherwise, sell, assign, transfer or encumber his interest in this Agreement, and/or in the license granted hereby, or in the lease for the premises at which the CENTER is located, and any purported sale, assignment, transfer or encumbrances shall be null and void.

b. OPERATOR may assign this Agreement to a corporation in which OPERATOR owns a majority of the voting control and equity, provided that:

i. OPERATOR actively manages the corporation and continues to devote his best efforts and full and exclusive time to the day-to-day operation and development of the license and the business of the CENTER; and

ii. the corporation is newly organized and its activities are confined exclusively to acting as a COTTMAN licensee under this Agreement; and

iii. the corporation executes a document in such form as shall be approved by COTTMAN in which it agrees to become a party to and to be bound by all the provisions of this License Agreement to the same extent as if it were named as the OPERATOR herein; and

iv. OPERATOR remains personally liable in all respects under this Agreement and OPERATOR and all officers, directors and stockholders of the corporation execute in form approved by COTTMAN a personal guaranty and agreement not to further transfer the stock; and

v. all stock certificates representing shares in the corporation bear the following legend:

The shares of stock represented by this certificate are subject to the terms and conditions set forth in a License Agreement dated    April 29, 2005, between

Joseph Bencharsky

(OPERATOR) and Cottman Transmission Systems, LLC, copies of which are on file in the principal offices of OPERATOR and COTTMAN.

c. Anything herein to the contrary notwithstanding:

i. If OPERATOR (or if OPERATOR dies or becomes incapacitated, his personal representative) desires to sell his CENTER and receives from a fully disclosed third person a bona fide written offer to purchase his CENTER, license and interests under this Agreement or if OPERATOR desires to sell the stock of any corporation to which they have been transferred pursuant hereto, he shall give COTTMAN written notice and a copy of such offer and COTTMAN shall have the option, exercisable within thirty days after receipt of such notice, to purchase such CENTER, license and interests in this Agreement or corporate stock, including the lease, on the same terms and conditions as offered by said third person provided that COTTMAN may substitute equivalent cash for any form of payment offered by said third person. If COTTMAN does not exercise its option and if such third person is of good character, reputation and financial condition and acceptable to COTTMAN, OPERATOR shall have the right for a period of ninety days after the expiration of COTTMAN's option period to accept the offer and to assign OPERATOR's interests to such third person (subject to the provisions of subsection d of this section);

ii. if OPERATOR dies and his personal representative does not desire to sell his CENTER, and if under controlling local law the deceased OPERATOR's interests in the CENTER, and this Agreement are distributable to heirs or legatees who are members of his immediate family and who otherwise would qualify as assignees under the terms of this section, then such attempted assignment by operation of law or will shall not be deemed in violation hereof, provided such heirs or legatees accept the conditions imposed in this section on otherwise permitted assignees.

d. Consent to an assignment, sale or transfer otherwise permitted or permissible as reasonable may be refused by COTTMAN unless:

i. all obligations of OPERATOR in connection with the CENTER are assumed by assignee, buyer or transferee;

ii. all prior ascertained or liquidated debts of OPERATOR in connection with the CENTER are paid concurrently with the assignment, sale or transfer;

iii. OPERATOR is not in default hereunder;

iv. assignee, buyer or transferee, before the effective date of the assignment, sale, or transfer, satisfactorily completes the Cottman training program required of new operators;

v. assignee, buyer or transferee executes COTTMAN's then current standard License Agreement for a full term as provided therein;

vi. OPERATOR, assignee, buyer or transferee, before the effectiveness of the assignment, sale or transfer, pays to COTTMAN its then current training fee and a license re-issuance fee of Six thousand dollars ($6,000) in connection with the administration and approval of such assignment, sale and reissuance of License to buyer; and

vii. OPERATOR and all officers, directors and shareholders of a corporate OPERATOR shall execute a general release under seal in favor of COTTMAN.

18. Relationship of the Parties; Indemnification.

a. The relationship between COTTMAN and OPERATOR is strictly that of a licensor and licensee and OPERATOR is an independent contractor. This Agreement does not create a joint venture, partnership, or agency and any act or omission of either party shall not bind or obligate the other except as expressly set forth in this Agreement.

b. OPERATOR recognizes that COTTMAN has entered into this Agreement in reliance upon and in recognition of the fact that OPERATOR will have full responsibility for the management and operation of the CENTER and that the amount of profit or loss resulting from the operation of the CENTER will be directly attributable to the performance of OPERATOR.

c. OPERATOR shall protect, indemnify and save COTTMAN harmless against any and all claims, demands, losses, damages (including punitive damages), costs, suits, judgments, penalties, expenses, and liabilities of any kind or nature arising directly or indirectly out of or in connection with the operation of the CENTER including work performed in accordance with the national fleet accounts program.

d. Except as expressly granted herein, OPERATOR recognizes that nothing contained in this Agreement shall be construed as giving to OPERATOR or to any other person or entity, any right or interest in the Cottman names and marks, trade secrets, methods, procedures or techniques developed by COTTMAN and used in the SYSTEM. Further, nothing contained herein shall be construed as limiting COTTMAN's right, title or interest in the Cottman names and marks, trade secrets, methods, procedures and techniques which are a part of the SYSTEM or COTTMAN's sole and exclusive right to register, to use and to license others to use such names and marks, trade secrets, methods, procedures and techniques.

e. In all public records and in his relationship with third parties as well as on letterheads and business forms, OPERATOR shall indicate his independent ownership of the CENTER and that he is a licensee of COTTMAN. OPERATOR agrees to conspicuously display both inside and outside the CENTER a notification that he is solely an independent licensee of COTTMAN.

19. Termination.

a. This paragraph shall apply to all License Agreements. COTTMAN, at is option, and without prejudice to any other rights or remedies which it may have hereunder, at law or in equity may terminate this Agreement:

i. if OPERATOR fails to complete the initial training program to COTTMAN's satisfaction, this Agreement will be terminated immediately; or

ii. immediately and without prior notice if in the sole judgment of COTTMAN, OPERATOR breaches subsection 7.a. or 7.b. of this Agreement; or

iii. if OPERATOR is delinquent in the payment of the continuing license fee or the continuing advertising fee, or any other payment due to COTTMAN and if the default is not cured within ten days after COTTMAN gives notice in writing to cure such default;

iv.  immediately and without prior notice if OPERATOR shall be adjudicated a bankrupt; if a receiver (permanent or temporary) of his property, or any part thereof is appointed by a court of competent authority; if he makes a general assignment for the benefit of his creditors; if execution is levied against his business or property; if OPERATOR abandons the CENTER or ceases its operation for a period of more than five consecutive regular business days;

v.  if OPERATOR defaults in the performance of any of the other terms, conditions and obligations of this Agreement or of his lease for the premises at which the CENTER is located and if the default is not cured within thirty days after COTTMAN gives notice to OPERATOR in writing to cure such default.

b.    Notwithstanding anything contained herein to the contrary, COTTMAN shall not be required to give OPERATOR notice in the case of a default hereunder or to afford OPERATOR any period within which to cure the same and COTTMAN may terminate this Agreement immediately and without prior notice on any default if, within twelve months immediately preceding the occurrence of such default, OPERATOR has been given notice of any default hereunder on two prior occasions, whether or not such default has been cured.

c.  If there are now, or hereafter shall be, other license agreements in effect between COTTMAN and OPERATOR, a default by OPERATOR under the terms and conditions of this or any other of such agreements, shall at the option of COTTMAN, constitute a default under all such agreements.

20.  Effect of Termination.

Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of its current term by virtue of OPERATOR's failure to renew the same as provided in section 2 hereof (sometimes herein "Expiration") OPERATOR shall cease to be a COTTMAN licensee, and

a.  OPERATOR agrees:

i.  promptly to pay COTTMAN all amounts owing from OPERATOR to COTTMAN;

ii.  immediately to discontinue the use of all Cottman names and marks, signs, structures, forms of advertising, telephone listings and service, manuals, and all materials and products of any kind which are identified or associated with the SYSTEM or COTTMAN and to return all such materials and products to COTTMAN;

iii.  thereafter to make no representations or statements that OPERATOR is or ever was in any way approved, endorsed or licensed by COTTMAN or associated or identified with COTTMAN or the SYSTEM in any manner whatsoever or that OPERATOR is a former COTTMAN OPERATOR; provided, however, OPERATOR shall honor all customer complaints made within the applicable guarantee or warranty period arising from work performed at the Center;

iv.  immediately to take all steps necessary to amend or terminate any registration or filing of any fictitious name or any other registration or filing containing the Cottman names and marks in order to effectuate the removal of the Cottman names and marks from such registration or filing.

v.  thereafter to refrain from establishing any HTML or other link between any website created, maintained or used by OPERATOR and COTTMAN's home pages(s) or other part of its website(s).

b.  COTTMAN shall have the option to purchase all of OPERATOR's right, title and interest in the CENTER and all equipment contained therein. If COTTMAN intends to exercise its option, COTTMAN shall notify OPERATOR of such intention at the time of termination or in the case of Expiration, within ten days before the expiration of the current term of this Agreement. The full purchase price of the CENTER shall be:

i.  in the case of Expiration, the fair market value of the equipment and parts then located at the CENTER less all outstanding liabilities of the CENTER;

ii.  in the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the CENTER or OPERATOR's cost, less depreciation on the equipment computed on a ten year straight line basis, less all outstanding liabilities of the CENTER. COTTMAN shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the CENTER and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, COTTMAN shall apply the purchase price in such manner as COTTMAN, in its own discretion, shall

determine. In no event, however, shall COTTMAN become liable for any of the debts and liabilities of OPERATOR or the CENTER and OPERATOR shall remain responsible for all outstanding debts and liabilities of the CENTER which remain unsatisfied subsequent to the distribution by COTTMAN of the purchase price funds;

iii. "Fair Market Value" as used in this section 19, shall be determined by an appraisal from an independent third party acceptable to COTTMAN. The costs of such appraisal shall be borne equally by COTTMAN and OPERATOR.

c. If, within five days after termination, OPERATOR fails to remove all displays of the COTTMAN names and marks and any other materials of any kind from the CENTER which are identified or associated with the SYSTEM or COTTMAN, COTTMAN may enter the CENTER or premises to effect such removal. In such event, COTTMAN shall not have liability to OPERATOR therefor nor be accountable or required to pay for such displays or materials.

d. If, within three (3) days after termination OPERATOR has not taken all steps necessary to amend, transfer or terminate telephone listings and service, any registration or filing of any fictitious name or any other registration or filing containing the COTTMAN names and marks, OPERATOR hereby irrevocably nominates, constitutes and appoints COTTMAN or any Prothonotary, Clerk of Court, or Attorney of any Court of Record as his true and lawful attorney for him and in his name and on his behalf to take all such action as may be necessary to amend, transfer or terminate all such telephone listings and service, registrations and filings of such fictitious name or any other registration or filing containing the COTTMAN names and marks, without liability to OPERATOR for so doing. In the event any action is required to be taken by or on behalf of COTTMAN pursuant to this subsection 20.d., the telephone company and all listing agencies, without liability to OPERATOR, may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

e. Termination of this Agreement shall not affect, modify or discharge any claims, rights, causes of action or remedies, which COTTMAN may have against OPERATOR, whether under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

f. OPERATOR hereby irrevocably authorizes COTTMAN to enter upon and take possession of the CENTER and to take in the name of OPERATOR, all other actions necessary to effect the provisions of this section, and any such entry or other action shall not be deemed a trespass or other illegal act, and COTTMAN shall not be liable in any manner to OPERATOR for so doing.

21.  Covenant Not to Compete.

OPERATOR acknowledges that as a participant in the SYSTEM, OPERATOR will receive confidential information and materials, trade secrets, and the unique methods, procedures and techniques developed by COTTMAN. Therefore, to protect the SYSTEM and COTTMAN and to induce COTTMAN to grant to OPERATOR the license as set forth herein, OPERATOR represents and warrants:

a. Except for the business contemplated by this Agreement, during its term OPERATOR shall not engage in any business the same as, similar to, or in competition with any CENTER, COTTMAN or the SYSTEM.

b. For a period of two years after the termination of this Agreement for any reason, OPERATOR shall not:

i. within a radius of ten miles of OPERATOR's former CENTER and three miles of any other CENTER in operation at the time of termination or any CENTER that has commenced operation during said two year period, begin or engage in any business the same as, similar to or in competition with such CENTER; or

ii. within the territorial boundaries of the United States, Canada, Puerto Rico, Australia, and the Virgin Islands, as a licensor, franchisor, or similar organization, engage in any business, the same, similar to, or in competition with, COTTMAN or the SYSTEM.

c. As used in subsections 21.a. and 21.b. above:

i.  "engage in" shall include, but not be limited to, activities whether direct or indirect, as an individual proprietor, partner, stockholder, director, officer, lessor, principal, broker, agent, employee, consultant, lender or otherwise; and

ii.  "in competition with" shall include, but not be limited to:

(a) the request of any present or future supplier, customer or operator of a CENTER to curtail or cancel its business relationship with any CENTER, COTTMAN or the SYSTEM,

(b) the disclosure of the identity of any past, present or future customer, supplier or operator of any CENTER, and

(c) the solicitation, canvassing or the authorization of any other person to solicit or canvass any past, present or future customer, supplier or operator of a CENTER.

As used in this subsection 21.c.ii., "future supplier, customer or operator" shall mean a supplier, customer, or operator who will have had a business relationship with a CENTER, COTTMAN or the SYSTEM during the term of this Agreement or during a period of one year following the termination of this Agreement.

d.  OPERATOR shall not at any time, directly or indirectly, divulge, furnish or make accessible to any person or entity financial or confidential information, trade secrets, methods, procedures, or techniques of any kind relating to any aspect of the operations of the CENTER, COTTMAN or the SYSTEM.

e.  OPERATOR acknowledges that in view of the nature of the SYSTEM and the business of COTTMAN, the restrictions contained in this section 21 are reasonable and necessary to protect the legitimate interests of the SYSTEM and COTTMAN and that any violation of such restrictions will result in irreparable injury to the SYSTEM or COTTMAN. Therefore, OPERATOR acknowledges that, in the event of such violation, COTTMAN shall be entitled to preliminary and permanent injunctive relief and damages as well as an equitable accounting of all earnings, profits, and other benefits arising from such violation, which remedies shall be cumulative and in addition to any other rights or remedies to which COTTMAN shall be entitled, and the arbitration provisions of section 21 shall not apply to any equitable proceeding seeking enforcement of the provisions of this section 21. If OPERATOR violates any restriction contained in this section 21, and it is necessary for COTTMAN to seek equitable relief, the restrictions contained herein shall remain in effect until two years after such relief is granted.

f.  OPERATOR agrees that the provisions of this covenant not to compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restriction contained in this section 20 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

22.  Expenses.

a.  In addition to the payment of the continuing license fee set forth in section 8 hereof, and the continuing advertising fee in section 9 hereof, OPERATOR agrees to pay all costs incurred by COTTMAN in collecting such fees and all other payments due hereunder and incurred in enforcing the provisions of this Agreement, including but not limited to, the cost of all telephone calls, telegrams, travel, legal expenses and correspondence.

b.  OPERATOR shall pay COTTMAN a late charge upon all amounts due and owing to COTTMAN in an amount equal to one and one-half percent (1-1/2%) of the average unpaid balance per month. If the late charge violates any usury or similar law, then the late charge will instead be the maximum amount allowed under applicable law. In addition, for each gross weekly business report not received by COTTMAN within two weeks from the date on which it was due, OPERATOR shall pay COTTMAN a late charge of ten dollars ($10.00) per report, per week.

c.  OPERATOR is responsible for paying all service charges and other fees resulting from OPERATOR'S financial institution in connection with EFT including, without limitation, any and all service charges and other fees arising in connection with any EFT by COTTMAN not being honored or processed

by OPERATOR's FINANCIAL INSTITUTION FOR ANY REASON. Further, OPERATOR shall pay COTTMAN a Fifty dollar ($50.00) charge for reprocessing any EFT not originally honored or processed by OPERATOR's financial institution.

23. Waiver.

Waiver by COTTMAN or OPERATOR of any violation or default hereunder shall not alter or impair either party's right with respect to any subsequent violation or default nor shall any delay or omission on the part of either party to exercise any right arising from such violation or default alter or impair such party's rights as to the same or any future violation or default. An acceptance by COTTMAN of any payment from the OPERATOR after the date on which such payment is due shall not operate as a waiver of OPERATOR's default or violation hereunder nor alter or impair COTTMAN's rights with respect to such violation or default.

24. Successors.

Except as otherwise specifically set forth in this Agreement, this Agreement shall inure to and be binding upon the parties hereto, their respective heirs, executors, administrators, successors and assigns. COTTMAN shall have the right to assign its rights and interests under this Agreement, provided that the assignee shall agree in writing to assume all obligations undertaken by COTTMAN hereunder. Such assignment shall discharge COTTMAN from all other obligations as set forth in this Agreement.

25. Notice.

Every notice under this Agreement shall be in writing and delivered personally or by registered or certified mail, return receipt requested, addressed to the party to whom it is directed at the address hereinabove set forth or at such other address as one party shall provide to the other in writing. All notices shall be effective when deposited, postage prepaid, in the mail and the return receipt shall be conclusive evidence thereof.

26. Risk of Operations.

OPERATOR recognizes the uncertainties inherent in all business ventures. OPERATOR agrees and acknowledges that, except as specifically set forth in this Agreement, no representations or warranties, express or implied have been made to OPERATOR, either by COTTMAN or anyone acting on its behalf or purporting to represent it, including, but not limited to, the prospects for successful operations, the level of business or profits that OPERATOR might reasonably expect, the desirability, profitability or expected traffic volume or profit of the CENTER (whether or not COTTMAN assisted OPERATOR in the selection of the location of the CENTER), the costs of equipping or the amount or type of equipment necessary or appropriate to the operation of the CENTER or as to the quality of any products or services to be sold by OPERATOR to its customers hereunder. OPERATOR acknowledges that all such factors are necessarily dependent upon variables beyond COTTMAN's control, including without limitation, the ability, motivation and amount and quality of effort expended by OPERATOR.

27. Severability.

If any portion of any section of this Agreement shall conflict with the applicable provisions of Federal, State or local law, the conflicting portion shall be construed in accordance with the specific provisions of the applicable law, and the remaining portion of said section, as well as the remainder of this Agreement, shall remain in full force and effect.

28. Dispute Resolution

a. Mandatory Arbitration

COTTMAN and OPERATOR shall attempt to negotiate and settle any dispute, controversy or claim or cause of action (collectively "Dispute") arising out of or relating to this Agreement. In the event the Dispute is not settled through negotiation, the parties shall file the Dispute with the American Arbitration Association ("AAA") in Philadelphia, Pennsylvania or such other place as COTTMAN may designate. The arbitration shall be conducted pursuant to the then prevailing Commercial Rules of the AAA. In the event of arbitration, the arbitrator(s) shall have the right to award or include in the award any relief which the arbitrator(s) deems proper in the circumstances (other than punitive or exemplary damages), including without limitation, money damages (with interest on unpaid amount from the due date), specific performance, and injunctive relief. The award of the arbitrator(s) shall be the sole and exclusive remedy between COTTMAN and OPERATOR regarding any claims, counterclaims, cross-claims, issues, or accountings ("Claims") presented or pled to the arbitrator(s), and shall be

made and shall promptly be payable free of any tax deduction, or offset. Judgment upon the award of the arbitration may be entered in the court having jurisdiction thereof, or application may be made to such court for a judicial acceptance of the award or any order of enforcement. COTTMAN and OPERATOR agree that any and all Claims in arbitration must, if at all, be asserted and served upon the other party within one year after the occurrence of facts giving rise to such Dispute.

In the event a demand for arbitration is asserted and served by a party within the last thirty days of such time periods, the time between the service of the arbitration demand through thirty days thereafter shall not be included in determining whether a counterclaim is barred by the limitations periods set forth herein. If the Claim in the arbitration is not asserted and served upon the other party within the time period described in this paragraph 27, the party seeking to assert any such Claim waives its right to do so. The arbitrator(s) shall be paid by the losing party. The arbitrator(s) shall have no authority to alter or modify any provision of this Agreement or to render an award which by its terms results in such an alteration or modification.

   b. Litigation

      i. Notwithstanding the agreements to negotiate or Arbitrate any Dispute, nothing herein shall bar COTTMAN the right to proceed directly to court, under the usual equity rules, in order to obtain temporary restraining orders and preliminary or permanent injunctions against conduct (threatened or otherwise) that may cause COTTMAN irreparable harm.

      ii. With respect to any legal proceedings arising out of or connected in any way to this Agreement, OPERATOR and COTTMAN consent to the jurisdiction and venue of any court of general jurisdiction of Montgomery County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania, and the parties further agree that the mailing (by certified mail, return receipt requested) to such party's last known address of any process shall constitute lawful and valid process.

   c. Violation of Dispute Resolution Provision

     In the event OPERATOR institutes arbitration in any venue other than those specified, or litigation in violation of the Mandatory Arbitration Provision, Cottman shall be entitled to a transfer or stay of said action, and OPERATOR shall assume all of COTTMAN's costs in connection with said transfer or stay, including but not limited to, reasonable counsel fees.

   29. Controlling Law.

   This Agreement has been entered into and shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

   30. JURY WAIVER

   OPERATOR AND COTTMAN HEREBY AGREE THAT THEY SHALL AND HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM, OR IN ANY MATTER WHATSOEVER WHICH ARISES OUT OF OR IS CONNECTED IN ANY WAY WITH THIS AGREEMENT OR ITS PERFORMANCE.

   31. Entire Agreement.

   This instrument contains the entire agreement of the parties, and supersedes, cancels, and revokes any and all other agreements between the parties relating to the subject matter of this Agreement. There are no representations or warranties, either oral or written, except those contained in this Agreement. Except as set forth in Section 6.c., this Agreement may be modified only by an agreement in writing signed by the party against whom enforcement of such modification is sought.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal on the date first above written.

WITNESS:                                COTTMAN TRANSMISSION SYSTEMS, LLC

_____                 By:_____ (Seal)
                                            Todd P. Leff, President

WITNESS:                                OPERATOR:

_____                 _____ (Seal)
                                            Joseph Bencharsky

APPENDIX "A"



NEW FRANCHISE

THE COTTMAN INITIAL FRANCHISE PACKAGE FEE SCHEDULE

<u>RANGES</u>

| | | |
|---|---|---|
| 1.  Initial Franchise Fee | 31,500.00 | 31,500.00 |
| 2.  Travel and Living Expenses while attending Training Class | 1,500.00 | 3,000.00 |
| 3.  Equipment | 53,370.00 | 68,336.00 |
| 4.  Initial Inventory | 2,000.00 | 4,000.00 |
| 5.  Interior Design Package | 4,560.00 | 7,560.00 |
| 6.  Initial Print Supply Order | 1,000.00 | 1,000.00 |
| 7.  Alamo Software's Transcheck Management System | 1,899.00 | 1,899.00 |
| 8.  Computer System | 1,500.00 | 2,500.00 |
| 9.  Grand Opening Advertising | 3,000.00 | 5,000.00 |
| 10.  Sign Survey, Purchase and Installation | 7,700.00 | 10,200.00 |
| 11.  Exterior Design Package | 4,450.00 | 6,350.00 |
| 12.  Miscellaneous Opening Costs/Additional Funds | <u>46,900.00</u> | <u>84,766.00</u> |
| | <u>$159,379.00</u> | <u>$226,111.00</u> |

1.   **LICENSE FEE**

As part of the granting of the Cottman License, the Cottman Management Team will assist and guide you in:

## Location

Market feasibility, including demographic and statistical analysis. Site selection, lease negotiations, including detailed review by Cottman professionals, interior layout, on-site examination and suggested floor plan.

## Personnel Recruiting

Upon request, Cottman will assist you in obtaining qualified sales and technical personnel.

## Equipment and Installation

Detailed planning and consultation to assist you with your shop layout will enhance the acquisition of the proper equipment for your Center at the best possible prices. The securing for you of a qualified contractor to install the equipment can also be arranged. Shipping and delivery coordination will further ensure a smooth start-up.

## Financing

Cottman will assist you in obtaining financing from commercial lending institutions.

## Opening Management Assistance

A member of the Cottman Management Team will visit your Center shortly after you have opened for business to review your training and assist you with any final details.

## Home Office and On-Site Training

Our comprehensive training program will prepare you for every phase of operation in your new Cottman Center. The "Cottman System" will encompass (but not be limited to) the following subjects:

| | |
|---|---|
| Advertising | Accounting |
| Customer Relations | Sales |
| Parts Inventory Control | Personnel Administration |
| Technical Specialist Procedures | |

**TOTAL COTTMAN INITIAL FRANCHISE FEE** .......................................................................**$31,500.00**

2.   **TRAVEL AND LIVING EXPENSES WHILE ATTENDING TRAINING**

We estimate your travel and living expenses while attending the three week home office training class to range from $1,500 - $3,000.

At your request we will assist you in making your airline and hotel reservations.

40U – 2X

3.    **EQUIPMENT**

The following is a list of suggested equipment required to operate a Cottman Center. Each shop requires an equipment package tailored to its specific floor plan. Once your location is secured, Cottman will work with you to select your equipment package.

| DESCRIPTION | Package I | Package II |
|---|---|---|
| Twin Post Lifts | 3 | 3 |
| Air Stations | 2 | 2 |
| Four Post Lift | 1 | 1 |
| Gray Jack[s] HTJ1000 | 2 | 2 |
| Gray Jack Adaptor 4WD/FWD | 1 | 1 |
| Joggle Jack | 1 | 1 |
| High Stands | 2 | 2 |
| Holding Fixture | 1 | 2 |
| Storage System | 2 | 1 |
| Spring Compressor Set/APT | 1 | 1 |
| Work Bench[es] | 4 | 4 |
| Cleaning Machine | 1 | 1 |
| Soap for Cleaning Machine | 1 | 1 |
| Special Tool Package | 1 | 1 |
| Bushing Driver Set | 1 | 1 |
| Turbo Cooling Line Flusher DLX | 1HD | 1HD |
| 5HP Air Compressor | 1 | 1 |
| Air Hoses | 6 | 6 |
| Air Coupler Packages | 2 | 2 |
| Press w/Separator | 1 | 1 |
| High Rise Drain Can | 1 | 1 |
| High Rise Drain Can DOW/TOP | 1 | 1 |
| Fluid Fill and Drain Cans | 1 | 1 |
| Small Parts Cleaner | 1 | 1 |
| Battery Charger | 1 | 1 |
| Floor Jack | 1 | -- |
| Cottman Clock | 1 | 1 |
| Parts Shelves | 8 | 8 |
| Parts Boxes | 175 | 175 |
| Drop Lights | 4 | 4 |
| Rag Receptacle | 1 | 1 |
| Barrel Pump | 1 | 1 |
| Drum Dolly | 1 | 1 |
| Engine Hanger | 1 | 1 |
| Van Engine Hanger | 1 | 1 |
| Bench Grinder w/stand | 1 | 1 |
| Safety Goggles | 2 | 2 |
| Steel Bench Vise | 1 | 1 |
| Jack Stand | 1 | 1 |
| First Aid Safety Kit | 1 | 1 |
| Hand Cleaner (1 Gallon) | 1 | 1 |
| Spill Response Kit | 1 | 1 |
| Spill Response Pads (200) | 1 | 1 |
| Snap-On Scanner/Import Kit | 1 | 1 |
| Tranx 2000 w/37 cables | 1 | 1 |
| Fluke 88 | 1 | 1 |
| Trans Cart | 1 | 1 |
| Torch Set | 1 | 1 |
| Clean and Soak Parts Washer | 1 | 1 |
| Heater  HI 260 | 1 | -- |
| Tank/Stand for Heater | 1 | -- |
| Power Pusher HD | 1 | 1 |
| Oil System | 1 | 1 |
| Trans Tech III | 1 | 1 |
| Front Axle Tool | 1 | 1 |
| Uni Dolly | 1 | -- |
| SOLX 2000 | 1 | 1 |
| Phone System (3 units) | 1 | -- |
| Cordless Phone | 1 | 1 |
| Shop-Key System one year/Parts & Time | 1 | 1 |
| Digital On Hold System | 1 | |

**TOTAL EQUIPMENT PACKAGE PRICE    $68,336**                    **$53,370**

The package price quoted is that in effect as of October 26, 2004, and may be adjusted to reflect any change in prices from suppliers received before the actual shipment.  COTTMAN shall release for shipment equipment, inventory and supplies if same is to be provided by COTTMAN, when the entire initial package fee is paid by OPERATOR.  Any balance is due no later than the first day of Training Class. OPERATOR is responsible to remit all local and state taxes, where applicable, and show proof thereof.  Title to equipment, inventory and supplies shall pass to OPERATOR upon delivery of the same by COTTMAN, or the supplier to a common carrier or licensed trucker and all risks of loss or damage in transit shall be borne by OPERATOR. OPERATOR is responsible to pay all freight charges where applicable.  A 15% restocking fee will be charged on all returned items.
40U-3X

4.   **INVENTORY**

A balanced selection of high quality parts, determined by the needs of the market. The initial inventory will enable you to efficiently supply your needs. Upon request, an itemized list of parts inventory will be supplied to you. The prices quoted are those in effect as of October 26, 2004, and will be adjusted to reflect any increase or decrease in price from suppliers received before the actual shipment.

5.   **INTERIOR DESIGN PACKAGE**

You must purchase an interior design package that Cottman has developed for the customer area to maintain uniformity in the appearance of Cottman Transmission Centers. The package includes:

| | | | |
|---|---|---|---|
| Ceiling Tiles | Flooring | Partitions | 6 Posters w/display frames |
| Tables | Counter | Monitor | Video Card |
| Paint | Chairs | Transmission Display | Track lighting |

**INTERIOR DESIGN PACKAGE** .......................................................................................**$4,560 - $7,560**

6.   **INITIAL PRINT SUPPLY ORDER**

| | |
|---|---|
| 1000 Repair Orders | 1000 Cottman Floor Mats |
| 1000 Key Tags | 100 BBB Brochures |
| 1 Set Padfolios | 1000 Letterhead |
| 1000 Envelopes | 1000 Business Cards |
| 100 Outside Sales Coupons | 2 Repair Order Racks |

**INITIAL PRINT SUPPLY ORDER**................................................................................... **$1,000.00**

7.   **ALAMO SOFTWARE'S TRANSCHECK MANAGEMENT SYSTEM**

This software was designed by Cottman and Alamo Software to be used in the operation of your Cottman Center. You must purchase the software and use it in your Center. TransCheck is a Point of Sale System which tracks inventory, parts costs, customer lists and profiles, and generates purchase orders, repair orders and all other forms required by Cottman to be used in your Center.

**TRANSCHECK SOFTWARE INCLUDING /LAP LINK**................................................................ **$ 1,899.00**

8.   **COMPUTER SYSTEM**

You must purchase a Computer System and a Dot Matrix Printer (Epson LQ 570+) to operate the TransCheck Management System. The cost of Computer Systems including monitors and printers vary depending upon the quality and quantity purchased. The minimum system requirements to operate the Trans Check Management System are 1) PC compatible; 2) 166 MHz; and 3) 32 MB RAM.

9.   **GRAND OPENING ADVERTISING**

You may choose one of the optional additional Grand Opening Advertising packages to promote your Center's activities during the initial opening period. The market will be examined to determine the appropriate media which will lead to the generation of business in the most cost-efficient manner. In addition, the Grand Opening Kit - including premium items and promotional materials - will be provided to the Operator for use in stimulating and enhancing the Grand Opening activities. Cottman will give an accounting of all monies expended on Operator's behalf. With an eye toward promotion and publicity, Ross Advertising will coordinate its efforts with the Operator to formulate the opening and on-going advertising campaigns.

10.  **SIGN SURVEY, PURCHASE AND INSTALLATION**

You must purchase your signs from Cottman. The typical required sign survey, purchase and installation ranges from $7,700 to $10,200. However, costs will vary depending upon such factors as dimensions and lease and/or zoning requirements.

40U – 4X

11.    **EXTERIOR DESIGN PACKAGE**

You must purchase an exterior design package that Cottman has developed for the fascia to maintain uniformity in the appearance of Cottman Transmission Centers.  The package includes:

|  |  |
|---|---|
| Exterior Fascia System (3' x 8' Panels) | 4 Window Decal Point of Sale Posters |
| Set of 4 Service Bay Banners | Vehicle Graphics Package |

and ranges in price from $4,450 to $6,350 depending on the number of fascia system panels needed.

12.    **MISCELLANEOUS OPENING COSTS/ADDITIONAL FUNDS**

You will incur costs such as freight, equipment installation, exterior and interior design package installation, painting and furnishing your Center, insurance, utility and rent deposits, professional fees and warranty fund deposit.  You will need capital to support ongoing business expenses, these expenses include payroll costs for your employees, utilities, rent, etc. to the extent that these costs are not covered by sales revenues.

40U – 5X

NAME: Joseph Bencharsky

AREA DESIRED   California

| | | |
|---|---|---|
| COTTMAN INITIAL FRANCHISE FEE | $ | 31,500.00 |
| DEPOSIT | $ | <19,500.00> |
| WARRANTY FUND DEPOSIT | $ | 5,000.00 |
| BALANCE DUE BEFORE ATTENDING TRAINING CLASS | $ | 17,000.00 |

THE INITIAL FEE HAS BEEN ACCEPTED BY THE FRANCHISEE.

FRANCHISEE:

_Joseph Bencharsky_
Joseph Bencharsky

DATE: _6/15/05_

_____

DATE: _____

COTTMAN ACKNOWLEDGES RECEIPT OF PAYMENT OF THE INITIAL FEE AS OUTLINED ABOVE.

COTTMAN TRANSMISSION SYSTEMS, LLC

BY: _Kate McPeak_

DATE: _6/23/05_

40U - 6X



## TRANSFER OF LICENSE TO A CORPORATION

The undersigned, an officer, director and owner of a majority of the issued and outstanding voting stock of the corporation set forth below and OPERATOR of a COTTMAN Transmission Center under a License Agreement executed on the date set forth below between himself and Cottman Transmission Systems, LLC. (COTTMAN) granting him a license to operate the CENTER at the location set forth below and the other undersigned directors, officers and shareholders of the corporation, who together with OPERATOR constitute all of the shareholders of the corporation, in order to induce COTTMAN to consent to the assignment of the License Agreement to the corporation in accordance with the provisions of Section 16 of the License Agreement agree as follows:

1. The undersigned OPERATOR shall remain personally liable in all respects under the License Agreement and all the other undersigned officers, directors and stockholders of the corporation, intending to be legally bound hereby, agree jointly and severally to be personally bound by the provisions of the License Agreement, specifically including the restrictive covenant contained in Section 20 hereof, to the same extent as if each of them were the OPERATOR as set forth in the License Agreement and they jointly and severally personally guarantee all of the OPERATOR's obligations set forth in said Agreement.

2. The undersigned agree not to transfer any stock in the corporation without the prior written approval of LICENSOR and agree that all stock certificates representing shares in the Corporation shall bear the following legend:

The shares of stock represented by this certificate are subject to terms and conditions set forth in a License Agreement dated _____ , between

**Joseph Bencharsky**

(OPERATOR) and Cottman Transmission Systems, LLC copies of which are on file in the principal offices of OPERATOR and Cottman.

3. Joseph Bencharsky shall devote his best efforts and full and exclusive time to the day-to-day operation and development of the License and the business of the Center.

4. _____ hereby agrees to become a party to and to be bound by all the provisions of the License Agreement executed on the date set forth below between OPERATOR and COTTMAN to the same extent as if it were named as the OPERATOR therein.

Date of License Agreement: __April 29, 2005_____

Location of Center:_____California_____

WITNESS:

_____      _Joseph Bencharsky_____(Seal)
                                     Joseph Bencharsky

WITNESS:

_____      _____(Seal)

WITNESS:

_____      _____(Seal)

Attest:

_____      By:_____(Seal)
            Secretary                Joseph Bencharsky President/Member

In consideration of the execution of the above agreement, Cottman Transmission Systems, LLC, hereby consents to the above assignment on this     29 day of April  2005.

COTTMAN TRANSMISSION SYSTEMS, LLC

By:_____(SEAL)
        Todd P. Leff, President

EXHIBIT A

Electronic Debit Authorization

(Authorization Agreement for Pre-Authorized Payments
via ACH Debit Originations)

COMPANY NAME:_____ FEIN:_____
I (We) hereby authorize Cottman Transmission Systems, LLC, hereinafter called COMPANY, to initiate debit entries
to my(our) checking account indicated below in the depository named below, hereinafter called DEPOSITORY, to
debit the same to such account.

DEPOSITORY NAME:_____CITY & STATE:_____

ABA/TRANSIT NO:_____ __ ACCOUNT NO.:_____

This authorization is to remain in full force and effect until the underlying obligations per the License Agreement
have been satisfied in full or released in writing by COMPANY.

This authorization further confirms my understanding of the Addendum to License Agreement signed by me/us in
which I/we expressly agree that this authorization shall apply to any and all Depositories and Bank accounts with
which I/we open accounts during the term of the License Agreement and any renewals.  Without limiting the
generality of the foregoing, I/we understand that if I/we close any bank account, I/we obligated to immediately, (i)
notify COMPANY thereof in writing, (ii) establish another bank account, and (iii) execute and deliver to COMPANY
all documents necessary for COMPANY to begin and continue making withdrawals from such depository/bank
account by ACH debiting or other electronic means.  I/we specifically agree and declare that this Authorization shall
be the only written authorization needed form me/us in order to initiate debit entries/ACH debit originations to
my/our bank account(s) established with any Depository in the future.

NAME(S)Joseph Bencharsky  SSN  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
          (PLEASE PRINT)

DATE: 6/15/05        SIGNATURE(S): _Joseph Bencharsky_
                                      Joseph Bencharsky

# ADDENDUM TO LICENSE AGREEMENT

THIS ADDENDUM is made this _12th_ day of _DECEMBER_ , 2005, between COTTMAN TRANSMISSION SYSTEMS, LLC ("COTTMAN"), and _KUVO, LLC_ _____ (collectively "OPERATOR"), to that certain License Agreement between them dated _____, relating to the operation of the Cottman Transmission Center located at _545 IRWIN STREET, SAN RAFAEL, CA 94901_ ("Center").

WHEREAS, COTTMAN has established a new program within its franchise system where participating operators offer and sell certain non transmission related services and products through their respective Cottman Transmission Centers subject to certain requirements and limitations set by COTTMAN ("Extended Services Program").

WHEREAS, OPERATOR desires to participate in COTTMAN's Extended Services Program.

NOW, THEREFORE, with intent to be legally bound, the parties agree to modify the License Agreement as follows:

1.    Section 7.d. of the License Agreement is modified to permit OPERATOR to participate in COTTMAN's Extended Services Program. OPERATOR shall offer and sell certain non transmission related services and products as designated by COTTMAN through the Extended Services Program under policies and procedures set forth in the COTTMAN Operator's Manual. In accordance with Section 8 of the License Agreement, OPERATOR shall report and pay a continuing license fee on all sales performed through the Extended Services Program. OPERATOR shall comply with all program requirements and restrictions as set and, from time to time, modified by COTTMAN, including but not limited to the issuance of commercially reasonable warranties. OPERATOR shall not perform automotive services unless such services are approved under COTTMAN's Extended Services Program. COTTMAN, in its sole discretion, and without prior notice, may expand, modify or terminate the Extended Services Program. In the event OPERATOR ceases to be a participant in the Extended Services Program, OPERATOR shall immediately cease offering and selling non transmission related services and/or products.

2.    Except as specifically modified herein, all terms of the License Agreement remain in full force and effect.

WITNESS:                              COTTMAN TRANSMISSION SYSTEMS, LLC.

_____    BY: _____ (SEAL)
                                              Todd P. Leff, President

WITNESS:                              OPERATOR:

_____    _____ (SEAL)

WITNESS:                              OPERATOR:

_____    _____ (SEAL)

FILE#:    1643.1

LAW OFFICES
## LAGARIAS & BOULTER
A LIMITED LIABILITY PARTNERSHIP
1629 FIFTH AVENUE
SAN RAFAEL, CALIFORNIA 94901-1828
TELEPHONE (415) 460-0100
FAX (415) 460-1099
WEB www.LB-ATTORNEYS.com

## FACSIMILE COVER SHEET

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO BE ATTORNEY-PRIVILEGED. IT IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE RECIPIENT OR AN AGENT FOR THE RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, RETURN THE ORIGINAL MESSAGE TO THE ABOVE ADDRESS, VIA U.S. POSTAL SERVICE. THANK YOU.

| | |
|---|---|
| **DATE:** | July 7, 2008 |
| **TO:** | John H. Fenimore |
| **FAX NO:** | (401) 435-6529 |
| **FROM:** | Peter C. Lagarias, Esq. |
| **RE:** | Cottman Transmission Systems, LLC v. Joseph Bencharsky, AAA No. 14 114 E 00947 08 |
| **CC:** | Tracy Lutz, Esq. (610) 664-5897<br>Mr. Joe Bencharsky (415) 383-8195 |
| **BY:** | ✔ *Fax Only*    ❑ *Fax & First Class Mail*    ❑ *URGENT!* |

*YOU SHOULD RECEIVE [ _ ] PAGE(S), INCLUDING THIS COVER SHEET. IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (415) 460-0100, EXT. 110.*

COMMENTS:

*We represent Mr. Joseph Bencharsky regarding claims he has against Cottman Transmission Systems, LLC and its parent company in an action pending in state court in California.*

*Our client does not consent to arbitration of claims by or against him, and accordingly requests that this matter be stayed pending the court action. Without waiving said jurisidictional objections, my client further objects to venue in Pennsylvania.*

# American Arbitration Association

*Dispute Resolution Services Worldwide*

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
http://www.adr.org

| | |
|---|---|
| DATE | 06/24/2008 5:34:05 PM |
| TO | Tracy Lutz |
| COMPANY | Cottman Transmission Systems, LLC |
| ADDRESS | 610-664-5897 |
| FROM | John H. Fenimore |
| NUMBER OF PAGES | 6 (Including cover page) |
| | |
| RE | Case number: 14 114 E 00947 08 |
| RECIPIENTS | Tracy Lutz; Joseph Bencharsky |

NOTES:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. **IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE (COLLECT) AND RETURN THE** ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

June 24, 2008

<u>Via Facsimile</u>

Tracy Lutz
Cottman Transmission Systems, LLC
201 Gibraltar Road, Suite 150
Horsham, PA 19044

Joseph Bencharsky
585 Irwin Street
San Rafael, CA 94901

Re: 14 114 E 00947 08
    Cottman Transmission Systems, LLC
    and
    Joseph Bencharsky

Dear Parties:

Thank you for choosing the American Arbitration Association (AAA) to assist you in resolving your dispute. The AAA is committed to providing you with the highest level of service in order to facilitate the resolution of your dispute. This letter, along with the included Arbitration Information Sheet, will serve to provide you with some basic information about the AAA's arbitration process and set forth some initial dates by which certain steps should be completed by the parties. I will continue to provide you with information regarding the various stages of the process as the case proceeds. I would encourage you to contact me at any time for further information about any of the procedures involved in your arbitration or to discuss how the Association can best serve your needs in resolving your dispute.

This will acknowledge receipt on June 20, 2008, of a Demand for Arbitration dated June 19, 2008, of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by the AAA. We understand that a copy was sent to Respondent. A copy of our Commercial Expedited Rules, amended as of September 1, 2007, may be obtained from our website at www.adr.org.

Claimant has requested that the hearing be held in Philadelphia, PA. Please review the Rules and the Arbitration Information Sheet regarding the locale of hearings. Also, in accordance with the Rules, if Respondent does not answer by July 9, 2008 we will assume that the claim is denied. If Respondent wishes to counterclaim, file two copies, together with the administrative fee, to my attention. A copy should also be directly sent to Claimant.

Finally, in order to assist the AAA in providing you with arbitrators free from conflicts, I have enclosed a Checklist for Conflicts to list those witnesses you expect to present, as well as any persons or entities with an interest in these proceedings. The checklist should only be sent to the AAA and should not be exchanged between the parties. The Conflicts Checklist is due within fifteen days from the date of this letter.

Please feel free to call if you have any questions. I look forward to assisting you in this matter.

Sincerely,
*//John Fenimore//*

John H. Fenimore
Case Manager
401 431 4706
FenimoreJ@adr.org

*Supervisor Information: Karen E. Smith, 401 431 4723, Smithke@adr.org*

Encl.
Arbitration Information Sheet
Conflicts Checklist
Charge Card Authorization Form

## Arbitration Information Sheet

This document provides information about your upcoming arbitration and the expectations concerning each party's conduct throughout the process. Please save this information sheet so that you may refer to it throughout the arbitration.

### Exchange of Correspondence and Documents

It is also important to note that the parties must exchange copies of all correspondence during the course of the arbitration. The two exceptions are the Checklist for Conflicts mentioned above and the party's arbitrator ranking list, which you will receive further information on during the course of the arbitrator appointment process. The parties only need to send copies of documents, such as discovery, to the AAA if the document is to be transmitted to the arbitrator for a determination.

### Communications with Arbitrator

It is very important that parties do not engage in any ex-parte communications with the arbitrator. So as to minimize the potential of such communications, this case will be administered by facilitating the exchange of appropriate written documents through the AAA. To ensure the proper handling of all case-related documents, the parties are asked not to submit correspondence directly to the arbitrator. Correspondence should be submitted to your case manager for transmittal to the arbitrator, copying the other party.

### Timeliness of Filings

Please pay particular attention to response dates included on any correspondence I send you. Untimely filings or responses will not be considered by the Association. Therefore, if you need an extension to any deadline, please contact the other party to reach an agreement. In the event you are unable to agree, the AAA or the arbitrator will determine if an extension will be granted.

### Locale of the Arbitration

The parties may agree to a locale for the arbitration. This agreement can be made in the parties' agreement or contract, or when the arbitration is submitted to the AAA. The AAA will place the arbitration within the agreed upon locale.

If the parties' contract or agreement does not specify a locale and the parties cannot agree on a locale, the AAA's Rules empower the AAA to determine the final locale. In these circumstances, the claimant will generally request that the hearing be held in a specific locale. If the respondent fails to file an objection to the locale requested by the claimant within 15 calendar days after the notice of the request has been sent to it by the AAA, the AAA will confirm the locale requested by the claimant is agreeable.

When a locale objection is filed, each party is requested to submit written statements regarding its reasons for preferring a specific locale. In preparing their written statements, the parties are asked by the administrator to address the following issues:

1. Location of parties & attorneys.
2. Location of witness and documents.
3. Location of records.
4. If construction, location of site, place or materials and the necessity of an on-site inspection.
5. Consideration of relative difficulty in traveling and cost to the parties.

6. Place of performance of contract.
7. Place of previous court actions.
8. Location of most appropriate panel.
9. Any other reasonable arguments that might affect the locale determination.

## AAA WebFile

We invite the parties to visit our website to learn more about how to file and manage your cases online. As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, including:

- File additional claims
- Complete the Checklist for Conflicts form
- View invoices and submit payment
- Share and manage documents
- Strike and rank listed neutrals
- Review case status or hearing dates and times

AAA WebFile provides flexibility because it allows you to work online as your schedule permits - day or night. Cases originally filed in the traditional offline manner can also be viewed and managed online. If the case does not show up when you log in, you may request access to the case through WebFile. Your request will be processed within 24 hours, after review by your case manager.

## Refund Schedule

The Association has a refund schedule in the administrative fee section of the Rules. After 60 days of the Association's receipt of the Demand or the appointment of the arbitrator the filing fees are non-refundable. The Association will only refund filing fees as outlined in the Rules and does not refund neutral costs incurred when parties settle their dispute or withdraw their claims. Case service fees are fully refundable if the parties provide at least 24 hours notice prior to the hearing.

# EXHIBIT B



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

RECEIVED

JUN 2 0 2008

AMERICAN ARBITRATION
RHODE ISLAND

## COMMERCIAL ARBITRATION RULES
## DEMAND FOR ARBITRATION

| **MEDIATION:** *If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐ *There is no additional administrative fee for this service.* | |
|---|---|
| Name of Respondent<br>Joseph Bencharsky | Name of Representative (if known) |
| Address<br>585 Irwin Street | Name of Firm (if applicable) |
| | Representative's Address |

| City<br>San Rafael | State<br>CA | Zip Code<br>94901- | City | State | Zip Code |
|---|---|---|---|---|---|
| Phone No.<br>415-456-3462 | | Fax No.<br>415-456-3850 | Phone No. | | Fax No. |
| Email Address: | | | Email Address: | | |

The named claimant, a party to an arbitration agreement dated _____April 29, 2005_____, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE

      See attached Demand for Arbitration

| Dollar Amount of Claim $31,362.73 | Other Relief Sought: ☒ Attorneys Fees  ☒ Interest<br>☒ Arbitration Costs ☐ Punitive/ Exemplary ☐ Other _____ |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $950.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
    Commercial litigation, preferably with franchise experience

Hearing locale____Philadelphia_____ (check one) ☐ Requested by Claimant  ☒ Locale provision included in the contract

| Estimated time needed for hearings overall:<br>_____hours or ___1/2___days | Type of Business: Claimant _____Franchisor_____<br>                 Respondent_____Franchisee_____ |
|---|---|

Is this a dispute between a business and a consumer? ☐Yes ☒ No Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☐ Atlanta, GA  ☐ Dallas, TX  ☒ East Providence, RI ☐ Fresno, CA  ☐ International Centre, NY, with a request that it commence administration of the arbitration.  Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Signature (may be signed by a representative)    Date:<br>*Tracy Lutz*   6/19/08 | Name of Representative<br>Tracy Lutz |
|---|---|
| Name of Claimant<br>Cottman Transmission Systems, LLC | Name of Firm (if applicable)<br>Cottman Transmission Systems, LLC |
| Address (to be used in connection with this case)<br>201 Gibraltar Road, Suite 150 | Representative's Address<br>201 Gibraltar Road, Suite 150 |

| City<br>Horsham | State<br>PA | Zip Code<br>19044- | City<br>Horsham | State<br>PA | Zip Code<br>19044- |
|---|---|---|---|---|---|
| Phone No.<br>215-643-5885 | | Fax No.<br>610-664-5897 | Phone No.<br>215-643-5885 | | Fax No.<br>610-664-5897 |
| Email Address: | | | Email Address:<br>tlutz@americandriveline.com | | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA.  Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online.  AAA Customer Service can be reached at 800-778-7879

# AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| Cottman Transmission Systems, LLC | : | **DEMAND FOR ARBITRATION** |
| Claimant, | : | |
| v. | : | |
| Joseph Bencharsky | : | |
| | : | |
| Respondent. | : | |

**To:**  Joseph Bencharsky    June 19, 2008
c/o Cottman Transmission
585 Irwin Street
San Rafael, CA 94901

The named claimant, a party to an arbitration agreement in a written contract, dated April 29, 2005, that provides for arbitration in Philadelphia, Pennsylvania under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration thereunder.

## THE PARTIES

1. Claimant Cottman Transmission Systems, LLC (hereinafter "Cottman") is a Delaware corporation and maintains a principal place of business at 201 Gibraltar Road, Suite 150, Horsham, PA 19044.

2. Cottman is engaged in business as a franchisor of transmission repair centers throughout the United States.  As such, Cottman licenses to certain individuals the right to use the trade name and trademark "Cottman" in connection with their independently owned and operated transmission repair centers.

3. Respondent Joseph Bencharsky is a Cottman franchisee who currently operates his Cottman franchise at 585 Irwin Street, San Rafael, CA 94901.

4. On April 29, 2005, Cottman and Respondent entered into a License Agreement wherein Respondent was granted a license to operate a Cottman Transmission repair center at 585 Irwin

Street, San Rafael, CA 94901 (the "Center"), for a period of fifteen (15) years. A true and correct copy of the License Agreement is attached hereto and made a part hereof as Exhibit "A".

## THE PARTIES' AGREEMENT

5.    Section 28.a. of the License Agreement specifically states that this dispute shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

6.    Pursuant to Section 8.a. of the License Agreement, Respondent was to pay Cottman a license fee each week in the amount of 7 ½% of the gross business transacted at his Cottman center for the preceding week. Section 8.a. also states the license fee was to be accompanied by a weekly business report in the form provided by Cottman.

7.    Pursuant to Section 8.d. of the License Agreement, in the event that Cottman does not receive a business report, the license fee may be calculated by Cottman based on an average of Respondent's weekly gross sales reported to Cottman over a number of preceding weeks determined by Cottman in its sole discretion.

8.    Pursuant to Section 9.a. of the License Agreement, Respondent, as a condition of his franchise, must pay Cottman a continuing advertising fee which is currently $730.00 per week.

9.    Pursuant to Section 22.a. of the License Agreement, Respondent agrees to pay all costs, specifically including legal expenses incurred by Cottman in collecting the above mentioned license and advertising fees.

10.    Additionally, pursuant to Section 22.b. of the License Agreement, Respondent is to pay Cottman a late charge upon all amounts due and owing in an amount equal to one and one-half (1 ½ %) percent of the average unpaid balance per week.

## RESPONDENT'S BREACH OF THE AGREEMENT

2

11.    In violation of the License Agreement, Respondent has accrued debts to Cottman which are due and owing pursuant to the Agreement. To date, approximately $31,362.73 remains due and owing from Respondent to Cottman; which sum has been calculated as follows:

| License Fees | |
|---|---|
| License fees for filed reports | $14,352.26 |
| Estimated fees for un-filed reports | $1,576.65 |
| Advertising | $15,182.49 |
| Penalties & Interest | $251.33 |
| **TOTAL** | **$ 31,362.73** |

12.    Pursuant to Section 8.a. of the License Agreement, Respondent is required to submit a weekly report of the Center's gross business transacted and to pay the license fees due Cottman on such business.

13.    Respondent has failed to remit two weekly business reports for the weeks ending 6/7/08 and 6/14/08 along with the applicable license fees. Accordingly, the license fees due and owing for these business reports have been estimated in paragraph 11 above and Respondent is required to submit these business reports to Cottman and to pay the license fees due thereon.

14.    Respondent has ceased submitting the required weekly business reports and the license fees due thereon. The amount due Cottman for this failure continues to increase as each new report becomes due.

15.    Pursuant to Sections 22.a. and 22.b. of the License Agreement, Cottman is entitled to a late fee upon all amounts due and owing to Cottman in an amount equal to 1 ½% of the average unpaid balance per month, as well as the costs and legal expenses incurred pursuing collection.

16.    Cottman has demanded that Respondent satisfy his obligations under the License Agreement.

17.    Despite Cottman's demand, Respondent has failed and refused and continues to fail and refuse to pay the monies due and outstanding to Cottman.

3

18.    As a result, Respondent has breached his contract with Cottman and has been unjustly

enriched.

**THE RELIEF SOUGHT:**

Claimant, Cottman Transmission Systems, LLC, demands judgment in its favor and

against the Respondent, Joseph Bencharsky, in the amount of $31,362.73, plus any other sums

that may be due and owing for license fees based on Respondent's failure to adequately account

for business transacted, plus any other sums that may arise subsequent to the filing of this

Demand for Arbitration, along with interest thereon, costs of arbitration, and attorneys' fees.

By:_____
       William B. Jameson
       Tracy Lutz
       Attorneys for Claimant
       Cottman Transmission Systems, LLC
       201 Gibraltar Road
       Horsham, PA 19044
       (610) 668-2900

# EXHIBIT C



# LICENSE AGREEMENT

# TABLE OF CONTENTS

|  | Background ...................................................................................................... | 1 |
| Section 1. | Grant of License ............................................................................................ | 1 |
| Section 2. | Term ................................................................................................................ | 2 |
| Section 3. | Location and Lease ...................................................................................... | 2 |
| Section 4. | Training and Commencement of Business ................................................ | 3 |
| Section 5. | Services Rendered by COTTMAN .............................................................. | 4 |
| Section 6. | Operator's Manual ........................................................................................ | 4 |
| Section 7. | Certain Obligations of OPERATOR ........................................................... | 5 |
| Section 8. | Continuing License Fees ............................................................................. | 6 |
| Section 9. | Advertising ..................................................................................................... | 7 |
| Section 10. | Insurance ........................................................................................................ | 8 |
| Section 11. | COTTMAN Names and Marks and Trade Secrets ................................... | 9 |
| Section 12. | Protection of SYSTEM ................................................................................. | 9 |
| Section 13. | Customer Warranties .................................................................................... | 10 |
| Section 14. | Telephone Service ........................................................................................ | 10 |
| Section 15. | Signs ............................................................................................................... | 10 |
| Section 16. | National Fleet Accounts ............................................................................... | 10 |
| Section 17. | Restrictions on Change of Ownership ....................................................... | 11 |
| Section 18. | Relationship of the Parties; Indemnification ............................................ | 13 |
| Section 19. | Termination .................................................................................................... | 13 |
| Section 20. | Effect of Termination .................................................................................... | 14 |
| Section 21. | Covenant Not to Compete ........................................................................... | 16 |
| Section 22. | Expenses ........................................................................................................ | 17 |
| Section 23. | Waiver ............................................................................................................. | 17 |
| Section 24. | Successors ..................................................................................................... | 17 |
| Section 25. | Notice .............................................................................................................. | 17 |
| Section 26. | Risk of Operations ........................................................................................ | 18 |
| Section 27. | Severability .................................................................................................... | 18 |
| Section 28. | Dispute Resolution ....................................................................................... | 18 |
| Section 29. | Controlling Law .............................................................................................. | 19 |
| Section 30. | JURY WAIVER ............................................................................................... | 19 |
| Section 31. | Entire Agreement .......................................................................................... | 19 |



☐ New       ☐ Conversion
☐ Elite      ☐ Champion

### License Agreement

AGREEMENT made   *9/14*   , 200*4*   , between COTTMAN TRANSMISSION SYSTEMS, LLC, 240 New York Drive, Fort Washington, Pennsylvania 19034 (hereinafter called "COTTMAN"), and

Joe Rego
521 Toyon Place
Benicia, CA  94510

(hereinafter called "OPERATOR")

As a result of extensive experience in the automotive transmission business, COTTMAN has developed and perfected certain methods, procedures and techniques of repairing, remanufacturing and servicing transmissions; and

COTTMAN has developed a system (hereinafter called the "SYSTEM") for conducting operations in the automotive transmission business which consists, in part, of the use of the Cottman name, Cottman's methods, procedures and techniques, and a network of Centers devoted exclusively to the repair of automotive transmissions (hereinafter called "CENTERS") which use the Cottman name and said methods, procedures and techniques; and

COTTMAN has created a substantial demand for its products and services by maintaining high standards of quality in its operations and in the operations of its licensed CENTERS and by extensive advertising; and

COTTMAN is actively engaged in promoting and expanding the reputation and good will of the name COTTMAN in connection with the automotive transmission business; and

In recognition of the value of participating in the SYSTEM, OPERATOR desires to acquire a license to operate a CENTER;

THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound, the parties agree as follows:

1.      Grant of License.

a.  In consideration of the payment of the initial fees, as set forth in Appendix A attached hereto and made a part hereof, OPERATOR shall have the right, subject to the terms and conditions set forth in this Agreement, to operate a CENTER (hereinafter called "the CENTER"), under the Cottman name and under any other trade names, trademarks, service marks and logos (hereinafter called "Cottman names and marks") presently used, or which may hereafter be used in the SYSTEM;

b. Operator's Center shall be located within the following area:

3145 Arden Way, Sacramento, CA 95825

S.M.S.A./COUNTY

The Center may not be relocated without the express prior written approval of Cottman, which approval shall not be unreasonably withheld.

i. Cottman reserves the right to establish other Centers within the same Standard Metropolitan Statistical Area or County. The number of Centers, however, shall not exceed one Center for each 50,000 motor vehicle registrations in the above named area. In areas which are not designated within a statistical metropolitan area, Cottman shall not establish another Center within a three mile radius of the OPERATOR's Center.

c. This paragraph shall apply to New, Elite and Conversion License Agreements. OPERATOR acknowledges that Cottman shall incur expenses upon execution of this Agreement, and in the event of any termination or cancellation of this Agreement for any reason whatsoever, COTTMAN in addition to any other rights or remedies it may have shall be entitled to retain the entire initial license fee as liquidated damages.

d. This paragraph shall apply to Champion License Agreements. In the event OPERATOR fails to open his CENTER for business within six (6) months from the date of execution hereof, either COTTMAN or OPERATOR shall have the right to cancel and terminate this Agreement by giving thirty (30) days' written notice to the other. Upon any such cancellation or termination pursuant to this Section, OPERATOR shall be entitled to receive a refund of all deposit monies paid to COTTMAN, minus all expenses incurred by COTTMAN.

2. Term.

This Agreement shall be for an initial term of fifteen (15) years. Provided OPERATOR is not then in default under this Agreement, OPERATOR shall have the right to renew this Agreement at the end of the initial term or any renewal term for an additional fifteen (15) year term by executing, at least ninety (90) days, but not more than one (1) year, prior to the expiration of the then current term, COTTMAN's then current standard License Agreement. There shall be no additional initial license fee payable upon renewal. The rate of continuing license fee, as described in Section 8, to be paid by OPERATOR to COTTMAN during any renewal period shall not be more than the rate of continuing license fee payable under the then expiring agreement unless during the term of the then expiring agreement the laws and other rules and regulations under which COTTMAN operates have been modified to require COTTMAN to provide additional goods or services to OPERATOR or to otherwise increase COTTMAN's cost of operating or unless COTTMAN is, in fact, providing additional goods or services to OPERATOR. If, at least ninety (90) days prior to the expiration of the then current term of this Agreement, OPERATOR has not executed COTTMAN's then current standard License Agreement, this Agreement shall automatically terminate at the end of the term without further action by either party. Anything contained in this section 2 to the contrary notwithstanding the initial term of this Agreement and all renewal terms shall be subject to the other provisions of this Agreement relating to termination.

3. Location and Lease.

a. This paragraph a. shall apply to New, Elite and Conversion Licensees,. Upon the execution of this Agreement, OPERATOR shall proceed with due diligence to secure a location for the CENTER within the Standard Metropolitan Statistical Area or County stated in Section 1.b. of this Agreement, in accordance with the guidelines set forth in COTTMAN's Center Opening Procedures Manual. In the event OPERATOR fails to open his CENTER for business within one year from the date of execution hereof, COTTMAN, in its sole discretion, and absent any extension of time agreed to in writing by COTTMAN, may immediately and without prior notice, cancel and terminate this Agreement.

b. This paragraph shall apply to Champion License Agreements. In the event OPERATOR fails to open his CENTER for business within six (6) months from the date of this Agreement, either COTTMAN or OPERATOR shall have the right to cancel and terminate this Agreement by giving thirty (30) days' written notice to the other. Upon any such cancellation or termination pursuant to this Section, OPERATOR shall be entitled to receive a refund of all deposit monies paid to COTTMAN, minus all expenses incurred by COTTMAN.

c.  OPERATOR shall not execute any documents of purchase or lease for any such location without the prior written approval of COTTMAN as to location and terms of sale in the event of purchase, or as to the lease and location in the event of lease.

d.  In the event OPERATOR purchases the CENTER location at any time during the term of this Agreement, or is the owner of the Center location prior to the execution of this AGREEMENT, OPERATOR does hereby grant to COTTMAN the option to lease the said location on substantially the same terms and conditions contained in any lease under which OPERATOR occupied the location as lessee, or if no such lease existed, then on terms and conditions which are commercially reasonable. The option herein granted may be exercised by COTTMAN for a period of thirty (30) days following the termination of this Agreement for any reason whatsoever.

e.  In the event of lease, upon COTTMAN's written approval of the proposed location and lease, OPERATOR shall execute the lease and deliver a copy of the fully executed lease to COTTMAN. The lease shall contain a conditional assignment clause which shall provide that upon the termination of this Agreement, for any reason whatsoever, COTTMAN shall have the option for thirty (30) days to assume the obligations of and to replace OPERATOR as the lessee under said lease and at any time thereafter reassign the lease to a new OPERATOR. OPERATOR agrees not to terminate, renew or in any way alter or amend such lease during the term thereof, or any renewal term thereof, without COTTMAN's prior written consent, and any attempted termination, renewal, alteration or amendment shall be null and void and have no effect as to COTTMAN or COTTMAN's interests.

f.  Except as otherwise provided in this Agreement, OPERATOR shall not assign its lease or sublet the CENTER, or any portion of the premises containing the CENTER.

g.  In the event OPERATOR chooses to design and construct his CENTER, OPERATOR shall engage COTTMAN's designated design and construction professional or, alternatively, procure design and construction services from another source approved by COTTMAN in writing and provided OPERATOR pays for and submits to a compliance audit by COTTMAN's designated design professional to assure compliance with COTTMAN's standards.

4.  Training Warranty Deposit and Commencement of Business.

a.  Prior to opening the CENTER for business, OPERATOR shall attend COTTMAN's training program and complete the course to COTTMAN's satisfaction. During the training program, OPERATOR shall receive instruction, training and education in the operation of the CENTER. In the event OPERATOR fails to complete training to COTTMAN's satisfaction, COTTMAN, in its sole discretion, may terminate this Agreement immediately, and this Agreement shall be of no further force and effect, and neither COTTMAN nor OPERATOR shall have any further liability or obligation to the other, provided however, that the provisions of paragraphs 20 and 21 hereof shall not be affected by any such termination.

b.  OPERATOR shall attend such additional training programs or meetings at such locations as COTTMAN may from time to time direct. All expenses of OPERATOR incurred in connection with attendance at training programs or sales meetings other than the initial training program shall be borne solely by OPERATOR.

c.  OPERATOR shall maintain at all times during the term of this Agreement or any renewal thereof, a staff of trained employees sufficient to operate the CENTER in accordance with this Agreement. OPERATOR shall not employ any person who may be required by COTTMAN to complete a training program but who fails to do so for any reason whatsoever.

d.  OPERATOR acknowledges and agrees that he has deposited the sum of Five thousand dollars ($5,000.00) with COTTMAN as a customer warranty deposit, which warranty deposit shall be held by COTTMAN as security for compliance of OPERATOR's customer warranty obligations under this Agreement. OPERATOR understands that the warranty deposit is a condition to this Agreement and authorizes COTTMAN, using its sole discretion, to administer the warranty deposit in accordance with the requirements of this section of the Agreement.

e.  The warranty deposit shall be interest bearing at the legal rate of interest for the

Commonwealth of Pennsylvania. Accrued interest shall be credited into the OPERATOR's warranty deposit account. COTTMAN shall have no obligation to establish a separate bank account for such funds.

    f. The warranty deposit shall be reimbursed to OPERATOR upon termination of this Agreement if the CENTER is sold by OPERATOR (with COTTMAN's prior written consent in accordance with section 17 of this Agreement) and the new franchisee assumes OPERATOR's warranty obligations and deposits a new warranty deposit with COTTMAN. In all other situations where this Agreement is terminated, the warranty deposit shall be administered as follows: I) COTTMAN, may expend the warranty deposit as needed to cover the costs of warranty work arising from warranties issued by the CENTER prior to the termination of this Agreement; and ii) COTTMAN shall retain the warranty deposit for a period of five (5) years from the date of termination of this Agreement, at which time any remaining balance will be returned to OPERATOR provided OPERATOR has complied fully with sections 18, 20 and 21 of this Agreement.

    g. All warranty repairs charged ;under paragraph 4.f. shall be performed at COTTMAN's then current Inter Center Warranty rate if performed at another Cottman Center. If no Cottman Center is available to perform the warranty work COTTMAN shall have the work completed at another authorized facility and charge such cost to OPERATOR.

    5. Services Rendered by COTTMAN.

    COTTMAN agrees to:

      a. assist OPERATOR in obtaining a location and negotiating a lease;

      b. assist OPERATOR with the layout of the CENTER and the installation of equipment;

      c. assist OPERATOR in finding and evaluating personnel;

      d. furnish to OPERATOR the Operator's Manual described in section 6, parts catalogs, and instructional and training materials for the purpose of providing guidance in the methods, procedures and techniques of operating a CENTER;

      e. furnish from time to time such business information and literature as COTTMAN determines may be helpful in improving the operations of the CENTER;

      f. advise and consult with OPERATOR during normal business hours on matters relating to all operations of the CENTER;

      g. advise OPERATOR of new developments and improvements in the SYSTEM and to offer to OPERATOR services, facilities, rights and privileges substantially similar to those generally offered to other licensed participants in the SYSTEM;

      h. provide initial training and additional training programs and meetings; and

      i. continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks and other distinguishing aspects of the SYSTEM.

    6. Operator's Manual.

    a. COTTMAN shall lend to OPERATOR a manual published by COTTMAN (herein called the "Operator's Manual") which includes, in part, the business procedures, technical advice and rules and regulations for the operation of the CENTER.

    b. OPERATOR acknowledges and agrees that:

      i. the Operator's Manual is the property of COTTMAN and shall remain its property during the term of this Agreement and any renewal hereof;

      ii. the Operator's Manual contains confidential information which OPERATOR will protect as a trade secret, and that its loss will cause substantial damage to COTTMAN and the SYSTEM although the amount of such loss would be incalculable with any degree of accuracy. Consequently, in the event of loss of

this Manual, OPERATOR agrees to pay to COTTMAN such sum as may be agreed upon for its replacement, as liquidated damages and not as a penalty;

iii. OPERATOR will not reprint or reproduce any portion of the Operator's Manual for any reason whatsoever;

iv. upon termination of this Agreement for any reason the Operator's Manual will be immediately returned to COTTMAN.

c. COTTMAN may add to or otherwise modify the Operator's Manual, from time to time, whenever COTTMAN considers such additions or modifications desirable to improve or maintain the standards of the SYSTEM and the efficient operation thereof, or to protect or maintain the good will associated with the Cottman names and marks or to meet competition.

d. From the date of the opening of the Center by OPERATOR, the provisions of the Operator's Manual as modified from time to time and the mandatory specifications, standards and operating procedures prescribed by COTTMAN and communicated to OPERATOR in writing, shall constitute provisions of this Agreement as if fully set forth herein. All references herein to this Agreement shall include the provisions of the Operator's Manual and all such mandatory specifications, standards and operating procedures.

7. Certain Obligations of OPERATOR.

In order to maintain the high quality and uniform standards associated with the SYSTEM and to protect its good will and reputation, OPERATOR agrees to:

a. deal fairly and honestly with the public or with COTTMAN;

b. honor and comply with the terms of all advertising placed by or at the direction of COTTMAN or OPERATOR;

c. devote his best efforts and full and exclusive time to the day-to-day operations and development of the license and the business of the CENTER;

d. operate the CENTER exclusively as an automotive transmission business and engage in no other type of business at the CENTER;

e. keep the CENTER open for business the minimum number of days per week and hours per day prescribed by COTTMAN from time to time;

f. keep and maintain the CENTER and its appearance in a clean and orderly manner consistent with the operation of a first class automotive business and the directives of COTTMAN deemed by it to be necessary to protect the standards of quality and uniformity of the CENTERS and the SYSTEM;

g. operate the CENTER in accordance with the methods, procedures and techniques included in the Operator's Manual as modified from time to time or otherwise directed or approved by COTTMAN;

h. comply at all times with all federal, state, provincial, county, city and other local laws, regulations and ordinances;

i. maintain at all times (except when fire or other casualty so prevents) sufficient supplies and personnel to operate the CENTER at maximum capacity and efficiency including a full time CENTER manager (other than OPERATOR) who is primarily responsible for customer contact within the CENTER, and who has successfully completed COTTMAN's Manager's training program;

j. register the fictitious name "Cottman Transmission Center" in accordance with applicable local, state or provincial laws and operate the CENTER under the name COTTMAN and under no other name, and use and display the Cottman names and marks prominently in such manner as may from time to time be directed in writing by COTTMAN and not use or prominently display any other trade name, trademark, service mark or other designation during the term of this Agreement;

k.  permit COTTMAN during business hours to inspect the premises of the CENTER, confer with OPERATOR and OPERATOR's employees and customers, check inventories, methods, books and records, and perform any other inspection deemed by COTTMAN to be necessary to protect the standards of quality and uniformity of the SYSTEM and OPERATOR's performance under this Agreement;

l.  submit to COTTMAN uniform reports and financial statements in accordance with the procedure set forth in the Operator's Manual, and deliver a copy of OPERATOR's federal income tax return relating to the operations of the CENTER within thirty (30) days after such return is filed.  In the event COTTMAN adopts as part of the SYSTEM a format of reporting vial electronic polling, OPERATOR agrees to submit his uniform reports through the internet or other electronic means which is compatible with software utilized by COTTMAN for such purposes;

m.  maintain a system of bookkeeping and record keeping approved by COTTMAN, keep his books and records at the CENTER at all times and make them available during business hours to authorized representatives of COTTMAN for the purpose of verifying the accuracy of OPERATOR's reports. If such verification reveals that the gross receipts reported by OPERATOR to COTTMAN are more than two (2%) percent less than OPERATOR's actual gross receipts, OPERATOR shall reimburse COTTMAN for all expenses connected with such verification, including, but not limited to, reasonable accounting and legal fees, and without limitation to any other rights and remedies ·Cottman in its sole discretion may elect to pursue, OPERATOR shall pay to COTTMAN immediately any delinquent license fees, together with interest at the rate of eighteen percent (18%) [or the maximum rate of interest allowed by law if less than eighteen percent (18%)] per year, calculated from the date when such license fees should have been paid to the date of actual payment;

n.  use only numerically consecutive repair orders provided by COTTMAN, for which COTTMAN may make a reasonable charge;

o.  purchase all equipment, parts, and other supplies from COTTMAN or suppliers approved by COTTMAN, or from other suppliers whose parts and supplies conform to original equipment manufacturers' specifications or to the minimum standards of quality, performance and uniformity established from time to time by COTTMAN.

p.  participate in the national fleet accounts program as hereinafter described in section 16.a. of this Agreement; and

q.  pay the continuing license fee and all other fees and/or charges arising under this Agreement, via electronic funds transfer as hereinafter described in section 8. of this Agreement

8.  Continuing License Fees.

a.  During the term of this Agreement, OPERATOR shall pay to COTTMAN a continuing license fee (the "continuing license fee") equal to seven and one-half (7 1/2%) percent of the gross business transacted by OPERATOR (as used in this section, the term "gross business" shall include all work completed and delivered to customers of the CENTER, exclusive of sales tax). The continuing license fee shall be paid weekly on each Tuesday based upon gross business transacted during the preceding calendar week.  The continuing license fee shall be remitted simultaneously together with a report showing the computation thereof upon forms or in a format, provided by COTTMAN. COTTMAN may, in its sole discretion, require OPERATOR to submit the reports via electronic polling from OPERATOR to COTTMAN through the internet or other electronic· means which is compatible with software utilized by COTTMAN for such purpose.

b.  The continuing license fee, and all other fees and/or charges arising under this Agreement, shall be remitted to COTTMAN via electronic funds transfer ("EFT") from the designated account(s) of OPERATOR's financial institution.  Prior to opening his/her CENTER, and from time to time thereafter as events may require, OPERATOR shall provide COTTMAN written authorization, and such other information as COTTMAN may require, in such form as shall be approved by COTTMAN, which shall authorize/enable OPERATOR's financial institution to accept debit originations, electronic debit entries, or other EFT, and electronically deposit fees and contributions owing COTTMAN directly to COTTMAN's bank account(s).

c.  OPERATOR authorizes COTTMAN to withdraw funds by EFT upon or after the said funds become due to COTTMAN under this Agreement, at such days and times as COTTMAN shall, in its sold discretion, determine. It shall be a non curable event of default under Section.19 of this Agreement if OPERATOR closes or otherwise makes OPERATOR's designated account non accessible by COTTMAN without completing the following before or promptly after the account is made non accessible:

    i.   notifying COTTMAN in wiring of such event;

    ii.   establishing another designated account for EFT withdraws; and

    iii.   providing the written authorization and information required

in sub section b. above.

    d.  In the event COTTMAN has not received by 12 noon (EST) Tuesday a report of sales from OPERATOR for the gross business transacted during the preceding week via (i) written statements/written business reports in the form stipulated by COTTMAN under section 8. of this Agreement, and/or (ii) by electronic polling, then COTTMAN shall be entitled to withdraw by EFT from OPERATOR's designated account(s) the appropriate continuing license fee based on an arithmetic average of OPERATOR's weekly gross sales reported to COTTMAN over a number of previous weeks determined by COTTMAN in its sole discretion or based in some other means of estimating OPERATOR's gross sales determined by COTTMAN in its sole discretion.  If a gross sales report in the form of a statement required under this section 8. is subsequently received and reflects (i) that the actual amount of the continuing license fee due was more than the amount of the EFT by COTTMAN, then COTTMAN shall be entitled to additional funds via EFT from OPERATOR's designated account(s) for the difference or (ii) that the actual amount of the royalty and advertising contribution due was less than the amount of the EFT by COTTMAN, then COTTMAN shall credit the excess amount to the payment of OPERATOR's future continuing license fee.

    e.  Upon written notice by COTTMAN to OPERATOR, OPERATOR may be required to pay any amount(s) due under this agreement directly to COTTMAN by check or other non-electronic means in lieu of EFT at COTTMAN's sole discretion.

    9.  Advertising.

    a.  During the term of this Agreement, OPERATOR shall pay to COTTMAN a continuing advertising fee (the "continuing advertising fee") in the amount of Seven hundred thirty  dollars ($730.00) per week or such other adjusted amount as may be determined from time to time pursuant to Section 9.d. of this agreement payable at the same time and in the same manner (i.e., via EFT) as set forth in Section 8 of this Agreement.

    b.  The continuing advertising fee shall not be used for general operating expenses of COTTMAN, but shall be used and expended for media costs, commissions, fees, production costs, development costs, and other costs of all advertising which is published, broadcast, displayed, or otherwise disseminated, including via any electronic means such as the internet or telephone, either during the calendar year within which such continuing advertising fee is received by COTTMAN or during the immediately succeeding calendar year. COTTMAN may, in its sole discretion, suspend the placement of advertising for OPERATOR if any payments due COTTMAN under this Agreement or any other agreement in effect between the parties are not paid the date upon which the payments are due. The suspension in advertising may continue until OPERATOR has paid current all monies owed COTTMAN. OPERATOR is not relieved of any obligation to make continuing advertising fee payments during the term of any suspension.  In the event advertising is suspended, COTTMAN, in its sole discretion, may apply advertising fees paid during the period of suspension toward any late fees, claims, invoices or other monies owed COTTMAN from OPERATOR.   During the term of any suspension OPERATOR shall be prohibited from placing advertising pursuant to paragraph 9.e.

    c.  All decisions from time to time regarding whether to utilize national, regional, or local advertising, or some combination thereof, and all decisions regarding selecting of the particular media, including electronic media such as the internet, and advertising content, shall be within the sole discretion of COTTMAN and such agencies or others as it may appoint, provided however, that except for those amounts utilized for national advertising or as set forth in section 9. b. above, all monies actually received from OPERATOR shall be spent for the local or regional market area of the CENTER.

    d.  The continuing advertising fee may be adjusted from time to time either nationally or by region or market area in Cottman's sole discretion, provided, however, no such adjustment shall exceed five percent (5%) in any calendar year, and provided further that no adjustment shall be deemed retroactive to any prior year.

    e.  Provided OPERATOR's advertising is not suspended by Cottman, nothing herein shall be deemed to prohibit OPERATOR from engaging in any advertising or promotion of his CENTER or business, in addition to the advertising or promotion paid for by COTTMAN. Provided such advertising or promotion shall be at the sole cost of OPERATOR and without deduction or credit against any fees or other monies owed by OPERATOR to COTTMAN, and shall be subject to the provisions of section 9.f. of this Agreement, except that under no circumstances shall OPERATOR (1) create, maintain or use a website or other form of electronic media

not paid for or approved in writing by COTTMAN for the purpose of advertising or promoting his CENTER or business; (2) create or adopt any domain name utilizing in any way the Cottman names and marks; and (3) establish any HTML or other link between any website created, maintained or used by OPERATOR and COTTMAN's home page(s) or other part of its website(s);

    f.   OPERATOR shall not use, display, publish, broadcast, or in any manner disseminate any advertising or promotional material unless the same has been first approved in writing by COTTMAN. In the event that COTTMAN from time to time furnishes to OPERATOR any advertising, promotional or informational materials to be used, displayed, or distributed in or about CENTER, OPERATOR agrees to follow the instructions of COTTMAN in connection therewith; and

    g.   In accordance with section 9.c. of this Agreement, COTTMAN may from time to time designate a COTTMAN website for the purpose of advertising the COTTMAN names and marks and services associated with the SYSTEM as well as individual CENTERS. OPERATOR acknowledges that all parts of the designated website, including any web page(s) dedicated to his CENTER, are the property of COTTMAN and that COTTMAN has sole and exclusive right and authority to change or terminate the website in total or in part as COTTMAN, in its sole discretion, deems appropriate.

    10.  Insurance.

    a.   OPERATOR shall purchase and at all times during the term of this Agreement shall maintain in full force and effect policies of insurance as follows:

    i.   Workmen's Compensation insurance, in amounts prescribed by law;

    ii.   insurance against all types of public liability including employer's liability insurance, liability insurance under either a comprehensive general liability policy or an occurrence basis or a garage liability policy, with bodily injury and property damage liability insurance, products liability or completed operations liability insurance, automobile liability insurance, including owned and non-owned hired cars, trucks, trailers and other motor vehicles, and customer automobile liability insurance; Automobile Insurance (suggested minimum policy limits: bodily injury liability $300,000.00 per person, $500,000.00 per occurrence, and $100,000.00 property damage liability); Garage Liability Insurance (suggested minimum policy limits: bodily injury liability $300,000.00 per person, $500,000.00 per occurrence, and $100,000.00 property damage liability);

    iii.   such additional insurance as may be required by the terms of any lease for the premises of the CENTER.

    b.   All policies of insurance required under this section shall be in form and in such amounts as COTTMAN shall reasonably determine with companies reasonably satisfactory to COTTMAN and shall protect, as named insureds, OPERATOR, COTTMAN and any other party designated by COTTMAN. All such policies shall contain an endorsement which provides that only actual notice to insured, if an individual, or to any executive officer of insured, if a corporation, shall constitute knowledge of the insured. OPERATOR shall furnish COTTMAN, any other named insured, and all other persons designated by COTTMAN, certificates issued by each of OPERATOR's insurers indicating that all required insurance is in full force and effect and will not be terminated or changed without at least thirty (30) days prior written notice from the insurer to each certificate holder. New certificates evidencing renewal of such insurance shall be furnished at least thirty (30) days prior to the date of expiration of each such policy. Within five (5) days of any request by COTTMAN, OPERATOR shall deliver the original of all such insurance policies to COTTMAN for examination.

    c.   If OPERATOR fails to obtain or maintain any insurance policy containing all the coverages, clauses and provisions required under this section, COTTMAN may, at its election, obtain and maintain said insurance for and in the name of OPERATOR. Within fifteen (15) days of any written request of COTTMAN, OPERATOR shall furnish all information necessary to obtain and maintain such insurance and shall pay all costs thereof.

    11.  COTTMAN Names and Marks and Trade Secrets.

    a.   OPERATOR hereby acknowledges the validity of the Cottman names and marks and that COTTMAN is the owner of all right, title and interest therein. OPERATOR agrees that he will use the COTTMAN names and marks in full compliance with specifications prescribed from time to time by COTTMAN and that all such usage and the good will established thereby shall inure to the exclusive benefit of COTTMAN.

b.  OPERATOR represents and warrants that:

i.  he will not contest, directly or indirectly, COTTMAN's ownership, title, right or interest in the Cottman names and marks, trade secrets, methods, procedures and techniques which are a part of the SYSTEM or contest COTTMAN's sole right to register, to use, and to license others to use such COTTMAN names and marks, trade secrets, methods, procedures and techniques and any other mark or name which incorporates the word "Cottman";

ii.  with the exception of the use of the names and marks in the manner expressly specified and authorized under this Agreement and the registration of a fictitious name solely in connection with the operation of the CENTER, he will not use or register or attempt to use or register in OPERATOR's name or in the name of any other person or entity any name or mark, corporate name or any designation of any kind utilizing the COTTMAN names and marks, or any other materials or electronically transmitted information used in the SYSTEM; and

iii.  he will not disclose to any person or entity except in the ordinary course of business, any data or information contained in the Operator's Manual and he will keep and maintain such data and information and other materials furnished to OPERATOR by COTTMAN as trade secrets.

c.  OPERATOR shall not:

i.  create, maintain or use a website or other form of electronic media not provided or approved in writing by COTTMAN in accordance with this Agreement containing any COTTMAN names or marks;

ii.  create or adopt any domain name utilizing in any way the COTTMAN names or marks; or

iii.  establish any HTML or other link between any website created, maintained or used by OPERATOR and COTTMAN's home pages(s) or other part of its website(s).

12.  Protection of SYSTEM.

If OPERATOR learns of any actual or threatened infringement or piracy of the Cottman names and marks, trade secrets, methods, procedures or techniques used in the SYSTEM (the "Infringement") or of any infringement or piracy claim made against OPERATOR by a party other than COTTMAN ("Third Party Claim"), OPERATOR shall immediately notify COTTMAN in writing of the Infringement or Third Party Claim. COTTMAN shall in the exercise of its sole discretion determine what action, if any, to take with respect to the foregoing and shall bear the expense of any such action. OPERATOR agrees to be named party and to give his full cooperation in such action if so requested by COTTMAN. If OPERATOR is named as a party in any legal proceeding brought by a party other than COTTMAN for infringement of trade names, trademarks, service marks, copyrights or trade secrets, based upon OPERATOR's use of the Cottman names and marks, any such proceeding shall be defended in the name of OPERATOR by and at the expense of COTTMAN.

13.  Customer Warranties.

OPERATOR recognizes that it is in the mutual best interest of OPERATOR and other operators participating in the SYSTEM for COTTMAN to establish uniform guarantees and warranties for labor and parts throughout the SYSTEM. OPERATOR therefore agrees to offer customers of the CENTER such guarantees and warranties as may from time to time be prescribed by COTTMAN, and no others, and to honor customer complaints made within the applicable guarantee or warranty period arising from work performed at any other CENTER. OPERATOR acknowledges that such guarantees and warranties are made to the customer by OPERATOR and not by COTTMAN, and that COTTMAN shall not be responsible for reimbursing any CENTER for work performed by any other CENTER. OPERATOR shall be entitled to be reimbursed by the operator of the CENTER which originally guaranteed or warranted the work for the cost of any automotive supplies, accessories, replacement parts and labor performed in satisfaction of such guarantee or warranty. OPERATOR shall fully comply with all of the policies and procedures concerning intercenter warranties as set forth from time to time in the Operator's Manual, as referred to in section 6 of this Agreement.

14. Telephone Service.

OPERATOR acknowledges that all telephone numbers and directory listings for the CENTER are the property of COTTMAN and that COTTMAN has the sole and exclusive right and authority to transfer, terminate and amend such telephone numbers and directory listings as COTTMAN, in its sole discretion, deems appropriate. In the event COTTMAN takes any action pursuant to this section 14, the telephone company and all listing agencies, without liability to OPERATOR may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

15. Signs.

OPERATOR shall erect outside and inside signs of such size and construction as directed by COTTMAN. No other signs may be erected or used. OPERATOR acknowledges and agrees that COTTMAN shall have exclusive control of the use and display of all sign faces bearing the Cottman name or marks.

16. National Fleet Accounts.

a. COTTMAN, as part of the SYSTEM, maintains various national/regional fleet accounts through a centralized billing system and provides transmission related repairs to the fleet accounts at COTTMAN designated locations at certain agreed prices ("national fleet accounts program"). OPERATOR agrees to participate in COTTMAN's national fleet accounts program or similar program(s) for as long as COTTMAN may offer the said program(s) during the term of this Agreement.

b. COTTMAN may, from time to time and in its sole discretion, designate OPERATOR's CENTER to receive a particular vehicle under the national fleet accounts program. In such event, OPERATOR agrees to:

i. accept and perform any transmission related repair work that the vehicle may require in accordance with COTTMAN published service grades;

ii. offer and honor such warranties as are required under COTTMAN's agreement with the fleet account;

iii. charge and accept payment for all repairs in accordance with the price agreed between COTTMAN and the fleet account for the particular type of repair, and not charge any additional fee to the end user;

iv. complete and provide such data, reports and/or documentation as COTTMAN may require in administering the national fleet accounts program;

v. pay to COTTMAN a one percent (1%) administrative fee from the total price of each fleet account repair; and

vi. purchase and/or subscribe to any necessary hardware or software to interface with COTTMAN's centralized billing system.

c. OPERATOR shall submit his/her billing information for all fleet account repairs through COTTMAN, who will issue payment to OPERATOR within five (5) business days of receipt of the payment from the fleet account. Payment to OPERATOR is contingent on payment from the fleet account; COTTMAN is not a guarantor of such payment. Payments issued to OPERATOR from COTTMAN will be net of the continuing license fee, the administrative fee and any fleet account rebill ALLOWANCE. Further, COTTMAN may, in its sole discretion, apply the payment in whole or in part against any outstanding and unpaid continuing license fees, continuing advertising fees, claims, inter-center warranty charges, invoices or other monies owed COTTMAN from OPERATOR.

d. The administrative fee may be adjusted from time to time in COTTMAN's sole discretion, provided, however, no such adjustment shall exceed five percent (5%) of the price of the repair.

e. COTTMAN retains all rights to the software used in connection with the national fleet accounts program. OPERATOR shall not directly or indirectly solicit the business of COTTMAN's fleet accounts.

f. Any charge back from a fleet account to COTTMAN for a repair performed by OPERATOR shall be paid by OPERATOR to COTTMAN within ten (10) days of demand from COTTMAN.

17.  Restrictions on Change of Ownership.

a.  All rights and interests of OPERATOR arising from this Agreement are personal to OPERATOR and except as otherwise provided in this section 16, OPERATOR shall not, without COTTMAN's prior written consent, voluntarily or involuntarily, by operation of law or otherwise, sell, assign, transfer or encumber his interest in this Agreement, and/or in the license granted hereby, or in the lease for the premises at which the CENTER is located, and any purported sale, assignment, transfer or encumbrances shall be null and void.

b.  OPERATOR may assign this Agreement to a corporation in which OPERATOR owns a majority of the voting control and equity, provided that:

i.  OPERATOR actively manages the corporation and continues to devote his best efforts and full and exclusive time to the day-to-day operation and development of the license and the business of the CENTER; and

ii.  the corporation is newly organized and its activities are confined exclusively to acting as a COTTMAN licensee under this Agreement; and

iii.  the corporation executes a document in such form as shall be approved by COTTMAN in which it agrees to become a party to and to be bound by all the provisions of this License Agreement to the same extent as if it were named as the OPERATOR herein; and

iv.  OPERATOR remains personally liable in all respects under this Agreement and OPERATOR and all officers, directors and stockholders of the corporation execute in form approved by COTTMAN a personal guaranty and agreement not to further transfer the stock; and

v.  all stock certificates representing shares in the corporation bear the following legend:

The shares of stock represented by this certificate are subject to the terms and conditions set forth in a License Agreement dated                    200    , between

Joe Rego

(OPERATOR) and Cottman Transmission Systems, LLC, copies of which are on file in the principal offices of OPERATOR and COTTMAN.

c.  Anything herein to the contrary notwithstanding:

i.  If OPERATOR (or if OPERATOR dies or becomes incapacitated, his personal representative) desires to sell his CENTER and receives from a fully disclosed third person a bona fide written offer to purchase his CENTER, license and interests under this Agreement or if OPERATOR desires to sell the stock of any corporation to which they have been transferred pursuant hereto, he shall give COTTMAN written notice and a copy of such offer and COTTMAN shall have the option, exercisable within thirty (30) days after receipt of such notice, to purchase such CENTER, license and interests in this Agreement or corporate stock, including the lease, on the same terms and conditions as offered by said third person provided that COTTMAN may substitute equivalent cash for any form of payment offered by said third person. If COTTMAN does not exercise its option and if such third person is of good character, reputation and financial condition and acceptable to COTTMAN, OPERATOR shall have the right for a period of ninety (90) days after the expiration of COTTMAN's option period to accept the offer and to assign OPERATOR's interests to such third person (subject to the provisions of subsection d of this section);

ii.  if OPERATOR dies and his personal representative does not desire to sell his CENTER, and if under controlling local law the deceased OPERATOR's interests in the CENTER, and this Agreement are distributable to heirs or legatees who are members of his immediate family and who otherwise would qualify as assignees under the terms of this section, then such attempted assignment by operation of law or will shall not be deemed in violation hereof, provided such heirs or legatees accept the conditions imposed in this section on otherwise permitted assignees.

d.  Consent to an assignment, sale or transfer otherwise permitted or permissible as reasonable may be refused by COTTMAN unless:

i.  all obligations of OPERATOR in connection with the CENTER are assumed by assignee, buyer or transferee;

ii.  all prior ascertained or liquidated debts of OPERATOR in connection with the CENTER are paid concurrently with the assignment, sale or transfer;

iii.  OPERATOR is not in default hereunder;

iv.  assignee, buyer or transferee, prior to the effective date of the assignment, sale, or transfer, satisfactorily completes the Cottman training program required of new operators;

v.  assignee, buyer or transferee executes COTTMAN's then current standard License Agreement for a full term as provided therein;

vi.  OPERATOR, assignee, buyer or transferee, prior to the effectiveness of the assignment, sale or transfer, pays to COTTMAN its then current training fee and a license re-issuance fee of Six thousand dollars ($6,000) in connection with the administration and approval of such assignment, sale and reissuance of License to buyer; and

vii.  OPERATOR and all officers, directors and shareholders of a corporate OPERATOR shall execute a general release under seal in favor of COTTMAN.

18.  Relationship of the Parties; Indemnification.

a.  The relationship between COTTMAN and OPERATOR is strictly that of a licensor and licensee and OPERATOR is an independent contractor. This Agreement does not create a joint venture, partnership, or agency and any act or omission of either party shall not bind or obligate the other except as expressly set forth in this Agreement.

b.  OPERATOR recognizes that COTTMAN has entered into this Agreement in reliance upon and in recognition of the fact that OPERATOR will have full responsibility for the management and operation of the CENTER and that the amount of profit or loss resulting from the operation of the CENTER will be directly attributable to the performance of OPERATOR.

c.  OPERATOR shall protect, indemnify and save COTTMAN harmless against any and all claims, demands, losses, damages (including punitive damages), costs, suits, judgments, penalties, expenses, and liabilities of any kind or nature arising directly or indirectly out of or in connection with the operation of the CENTER including work performed in accordance with the national fleet accounts program.

d.  Except as expressly granted herein, OPERATOR recognizes that nothing contained in this Agreement shall be construed as giving to OPERATOR or to any other person or entity, any right or interest in the Cottman names and marks, trade secrets, methods, procedures or techniques developed by COTTMAN and used in the SYSTEM. Further, nothing contained herein shall be construed as limiting COTTMAN's right, title or interest in the Cottman names and marks, trade secrets, methods, procedures and techniques which are a part of the SYSTEM or COTTMAN's sole and exclusive right to register, to use and to license others to use such names and marks, trade secrets, methods, procedures and techniques.

e.  In all public records and in his relationship with third parties as well as on letterheads and business forms, OPERATOR shall indicate his independent ownership of the CENTER and that he is a licensee of COTTMAN. OPERATOR agrees to conspicuously display both inside and outside the CENTER a notification that he is solely an independent licensee of COTTMAN.

19. Termination.

a. This paragraph shall apply to all License Agreements. COTTMAN, at is option, and without prejudice to any other rights or remedies which it may have hereunder, at law or in equity may terminate this Agreement:

i. if OPERATOR fails to complete the initial training program to COTTMAN's satisfaction, this Agreement will be terminated immediately; or

ii. immediately and without prior notice if in the sole judgment of COTTMAN, OPERATOR breaches subsection 7.a. or 7.b. of this Agreement; or

iii. if OPERATOR is delinquent in the payment of the continuing license fee or the continuing advertising fee, or any other payment due to COTTMAN and if the default is not cured within ten (10) days after COTTMAN gives notice in writing to cure such default;

iv. immediately and without prior notice if OPERATOR shall be adjudicated a bankrupt; if a receiver (permanent or temporary) of his property, or any part thereof is appointed by a court of competent authority; if he makes a general assignment for the benefit of his creditors; if execution is levied against his business or property; if OPERATOR abandons the CENTER or ceases its operation for a period of more than five (5) consecutive regular business days;

v. if OPERATOR defaults in the performance of any of the other terms, conditions and obligations of this Agreement or of his lease for the premises at which the CENTER is located and if the default is not cured within thirty (30) days after COTTMAN gives notice to OPERATOR in writing to cure such default.

b. This paragraph shall apply to Champion License Agreements. COTTMAN or OPERATOR may terminate this Agreement by giving thirty (30) days written notice to the other, if, within six (6) months from the date hereof, OPERATOR fails to open his CENTER, as set forth in either Sections 1.d. or 3.b. of this Agreement.

c. Notwithstanding anything contained herein to the contrary, COTTMAN shall not be required to give OPERATOR notice in the case of a default hereunder or to afford OPERATOR any period within which to cure the same and COTTMAN may terminate this Agreement immediately and without prior notice on any default if, within twelve (12) months immediately preceding the occurrence of such default, OPERATOR has been given notice of any default hereunder on two (2) prior occasions, whether or not such default has been cured.

d. If there are now, or hereafter shall be, other license agreements in effect between COTTMAN and OPERATOR, a default by OPERATOR under the terms and conditions of this or any other of such agreements, shall at the option of COTTMAN, constitute a default under all such agreements.

20. Effect of Termination.

Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of its current term by virtue of OPERATOR's failure to renew the same as provided in section 2 hereof (sometimes herein "Expiration") OPERATOR shall cease to be a COTTMAN licensee, and

a. OPERATOR agrees:

i. promptly to pay COTTMAN all amounts owing from OPERATOR to COTTMAN;

ii. immediately to discontinue the use of all Cottman names and marks, signs, structures, forms of advertising, telephone listings and service, manuals, and all materials and products of any kind which are identified or associated with the SYSTEM or COTTMAN and to return all such materials and products to COTTMAN;

iii. thereafter to make no representations or statements that OPERATOR is or ever was in any way approved, endorsed or licensed by COTTMAN or associated or identified with COTTMAN or the SYSTEM in any manner whatsoever or that OPERATOR is a former COTTMAN OPERATOR; provided,

however, OPERATOR shall honor all customer complaints made within the applicable guarantee or warranty period arising from work performed at the Center;

        iv. immediately to take all steps necessary to amend or terminate any registration or filing of any fictitious name or any other registration or filing containing the Cottman names and marks in order to effectuate the removal of the Cottman names and marks from such registration or filing.

        v. thereafter to refrain from establishing any HTML or other link between any website created, maintained or used by OPERATOR and COTTMAN's home pages(s) or other part of its website(s).

    b. COTTMAN shall have the option to purchase all of OPERATOR's right, title and interest in the CENTER and all equipment contained therein. If COTTMAN intends to exercise its option, COTTMAN shall notify OPERATOR of such intention at the time of termination or in the case of Expiration, within ten (10) days prior to the expiration of the current term of this Agreement. The full purchase price of the CENTER shall be:

        i. in the case of Expiration, the fair market value of the equipment and parts then located at the CENTER less all outstanding liabilities of the CENTER;

        ii. in the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the CENTER or OPERATOR's cost, less depreciation on the equipment computed on a ten (10) year straight line basis, less all outstanding liabilities of the CENTER. COTTMAN shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the CENTER and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, COTTMAN shall apply the purchase price in such manner as COTTMAN, in its own discretion, shall determine. In no event, however, shall COTTMAN become liable for any of the debts and liabilities of OPERATOR or the CENTER and OPERATOR shall remain responsible for all outstanding debts and liabilities of the CENTER which remain unsatisfied subsequent to the distribution by COTTMAN of the purchase price funds;

        iii. "Fair Market Value" as used in this section 19, shall be determined by an appraisal from an independent third party acceptable to COTTMAN. The costs of such appraisal shall be borne equally by COTTMAN and OPERATOR.

    c. If, within five (5) days after termination, OPERATOR fails to remove all displays of the COTTMAN names and marks and any other materials of any kind from the CENTER which are identified or associated with the SYSTEM or COTTMAN, COTTMAN may enter the CENTER or premises to effect such removal. In such event, COTTMAN shall not have liability to OPERATOR therefor nor be accountable or required to pay for such displays or materials.

    d. If, within three (3) days after termination OPERATOR has not taken all steps necessary to amend, transfer or terminate telephone listings and service, any registration or filing of any fictitious name or any other registration or filing containing the COTTMAN names and marks, OPERATOR hereby irrevocably nominates, constitutes and appoints COTTMAN or any Prothonotary, Clerk of Court, or Attorney of any Court of Record as his true and lawful attorney for him and in his name and on his behalf to take all such action as may be necessary to amend, transfer or terminate all such telephone listings and service, registrations and filings of such fictitious name or any other registration or filing containing the COTTMAN names and marks, without liability to OPERATOR for so doing. In the event any action is required to be taken by or on behalf of COTTMAN pursuant to this subsection 20.d., the telephone company and all listing agencies, without liability to OPERATOR, may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

    e. Termination of this Agreement shall not affect, modify or discharge any claims, rights, causes of action or remedies, which COTTMAN may have against OPERATOR, whether under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

    f. OPERATOR hereby irrevocably authorizes COTTMAN to enter upon and take possession of the CENTER and to take in the name of OPERATOR, all other actions necessary to effect the provisions of this section, and any such entry or other action shall not be deemed a trespass or other illegal act, and COTTMAN shall not be liable in any manner to OPERATOR for so doing.

21. Covenant Not to Compete.

OPERATOR acknowledges that as a participant in the SYSTEM, OPERATOR will receive confidential information and materials, trade secrets, and the unique methods, procedures and techniques developed by COTTMAN. Therefore, to protect the SYSTEM and COTTMAN and to induce COTTMAN to grant to OPERATOR the license as set forth herein, OPERATOR represents and warrants:

a. Except for the business contemplated by this Agreement, during its term OPERATOR shall not engage in any business the same as, similar to, or in competition with any CENTER, COTTMAN or the SYSTEM.

b. For a period of two (2) years after the termination of this Agreement for any reason, OPERATOR shall not:

i. within a radius of ten (10) miles of OPERATOR's former CENTER and three (3) miles of any other CENTER in operation at the time of termination or any CENTER that has commenced operation during said two (2) year period, begin or engage in any business the same as, similar to or in competition with such CENTER; or

ii. within the territorial boundaries of the United States, Canada, Puerto Rico, Australia, and the Virgin Islands, as a licensor, franchisor, or similar organization, engage in any business, the same, similar to, or in competition with, COTTMAN or the SYSTEM.

c. As used in subsections 21.a. and 21.b. above:

i. "engage in" shall include, but not be limited to, activities whether direct or indirect, as an individual proprietor, partner, stockholder, director, officer, lessor, principal, broker, agent, employee, consultant, lender or otherwise; and

ii. "in competition with" shall include, but not be limited to:

(a) the request of any present or future supplier, customer or operator of a CENTER to curtail or cancel its business relationship with any CENTER, COTTMAN or the SYSTEM,

(b) the disclosure of the identity of any past, present or future customer, supplier or operator of any CENTER, and

(c) the solicitation, canvassing or the authorization of any other person to solicit or canvass any past, present or future customer, supplier or operator of a CENTER.

As used in this subsection 21.c.ii., "future supplier, customer or operator" shall mean a supplier, customer, or operator who will have had a business relationship with a CENTER, COTTMAN or the SYSTEM during the term of this Agreement or during a period of one (1) year following the termination of this Agreement.

d. OPERATOR shall not at any time, directly or indirectly, divulge, furnish or make accessible to any person or entity financial or confidential information, trade secrets, methods, procedures, or techniques of any kind relating to any aspect of the operations of the CENTER, COTTMAN or the SYSTEM.

e. OPERATOR acknowledges that in view of the nature of the SYSTEM and the business of COTTMAN, the restrictions contained in this section 21 are reasonable and necessary to protect the legitimate interests of the SYSTEM and COTTMAN and that any violation of such restrictions will result in irreparable injury to the SYSTEM or COTTMAN. Therefore, OPERATOR acknowledges that, in the event of such violation, COTTMAN shall be entitled to preliminary and permanent injunctive relief and damages as well as an equitable accounting of all earnings, profits, and other benefits arising from such violation, which remedies shall be cumulative and in addition to any other rights or remedies to which COTTMAN shall be entitled, and the arbitration provisions of section 21 shall not apply to any equitable proceeding seeking enforcement of the provisions of this section 21. If OPERATOR violates any restriction contained in this section 21, and it is necessary for COTTMAN to seek equitable relief, the restrictions contained herein shall remain in effect until two (2) years after such relief is granted.

f. OPERATOR agrees that the provisions of this covenant not to compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restriction contained in this section 20 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

22. Expenses.

a. In addition to the payment of the continuing license fee set forth in section 8 hereof, and the continuing advertising fee in section 9 hereof, OPERATOR agrees to pay all costs incurred by COTTMAN in collecting such fees and all other payments due hereunder and incurred in enforcing the provisions of this Agreement, including but not limited to, the cost of all telephone calls, telegrams, travel, legal expenses and correspondence.

c. OPERATOR shall pay COTTMAN a late charge upon all amounts due and owing to COTTMAN in an amount equal to one and one-half percent (1-1/2%) of the average unpaid balance per month. If the late charge violates any usury or similar law, then the late charge will instead be the maximum amount allowed under applicable law. In addition, for each gross weekly business report not received by COTTMAN within two (2) weeks from the date on which it was due, OPERATOR shall pay COTTMAN a late charge of ten dollars ($10.00) per report, per week.

d. OPERATOR is responsible for paying all service charges and other fees resulting from OPERATOR'S financial institution in connection with EFT including, without limitation, any and all service charges and other fees arising in connection with any EFT by COTTMAN not being honored or processed by OPERATOR's FINANCIAL INSTITUTION FOR ANY REASON. Further, OPERATOR shall pay COTTMAN a Fifty dollar ($50.00) charge for reprocessing any EFT not originally honored or processed by OPERATOR's financial institution.

23. Waiver.

Waiver by COTTMAN or OPERATOR of any violation or default hereunder shall not alter or impair either party's right with respect to any subsequent violation or default nor shall any delay or omission on the part of either party to exercise any right arising from such violation or default alter or impair such party's rights as to the same or any future violation or default. An acceptance by COTTMAN of any payment from the OPERATOR after the date on which such payment is due shall not operate as a waiver of OPERATOR's default or violation hereunder nor alter or impair COTTMAN's rights with respect to such violation or default.

24. Successors.

Except as otherwise specifically set forth in this Agreement, this Agreement shall inure to and be binding upon the parties hereto, their respective heirs, executors, administrators, successors and assigns. COTTMAN shall have the right to assign its rights and interests under this Agreement, provided that the assignee shall agree in writing to assume all obligations undertaken by COTTMAN hereunder. Such assignment shall discharge COTTMAN from all other obligations as set forth in this Agreement.

25. Notice.

Every notice under this Agreement shall be in writing and delivered personally or by registered or certified mail, return receipt requested, addressed to the party to whom it is directed at the address hereinabove set forth or at such other address as one party shall provide to the other in writing. All notices shall be effective when deposited, postage prepaid, in the mail and the return receipt shall be conclusive evidence thereof.

26. Risk of Operations.

OPERATOR recognizes the uncertainties inherent in all business ventures. OPERATOR agrees and acknowledges that, except as specifically set forth in this Agreement, no representations or warranties, express or implied have been made to OPERATOR, either by COTTMAN or anyone acting on its behalf or purporting to represent it, including, but not limited to, the prospects for successful operations, the level of business or profits that OPERATOR might reasonably expect, the desirability, profitability or expected traffic volume or profit of the CENTER (whether or not COTTMAN assisted OPERATOR in the selection of the location of the CENTER), the

costs of equipping or the amount or type of equipment necessary or appropriate to the operation of the CENTER or as to the quality of any products or services to be sold by OPERATOR to its customers hereunder. OPERATOR acknowledges that all such factors are necessarily dependent upon variables beyond COTTMAN's control, including without limitation, the ability, motivation and amount and quality of effort expended by OPERATOR.

27.    Severability.

If any portion of any section of this Agreement shall conflict with the applicable provisions of Federal, State or local law, the conflicting portion shall be construed in accordance with the specific provisions of the applicable law, and the remaining portion of said section, as well as the remainder of this Agreement, shall remain in full force and effect.

28.    Dispute Resolution

a.    Mandatory Arbitration

COTTMAN and OPERATOR shall attempt to negotiate and settle any dispute, controversy or claim or cause of action (collectively "Dispute") arising out of or relating to this Agreement. In the event the Dispute is not settled through negotiation, the parties shall file the Dispute with the American Arbitration Association ("AAA") in Philadelphia, Pennsylvania or such other place as COTTMAN may designate. The arbitration shall be conducted pursuant to the then prevailing Commercial Rules of the AAA. In the event of arbitration, the arbitrator(s) shall have the right to award or include in the award any relief which the arbitrator(s) deems proper in the circumstances (other than punitive or exemplary damages), including without limitation, money damages (with interest on unpaid amount from the due date). specific performance, and injunctive relief. The award of the arbitrator(s) shall be the sole and exclusive remedy between COTTMAN and OPERATOR regarding any claims, counterclaims, cross-claims, issues, or accountings ("Claims") presented or pled to the arbitrator(s), and shall be made and shall promptly be payable free of any tax deduction, or offset. Judgment upon the award of the arbitration may be entered in the court having jurisdiction thereof, or application may be made to such court for a judicial acceptance of the award or any order of enforcement. COTTMAN and OPERATOR agree that any and all Claims in arbitration must, if at all, be asserted and served upon the other party within one (1) year after the occurrence of facts giving rise to such Dispute.

In the event a demand for arbitration is asserted and served by a party within the last thirty (30) days of such time periods, the time between the service of the arbitration demand through thirty (30) days thereafter shall not be included in determining whether a counterclaim is barred by the limitations periods set forth herein. If the Claim in the arbitration is not asserted and served upon the other party within the time period described in this paragraph 27, the party seeking to assert any such Claim waives its right to do so. The arbitrator(s) shall be paid by the losing party. The arbitrator(s) shall have no authority to alter or modify any provision of this Agreement or to render an award which by its terms results in such an alteration or modification.

b.    Litigation

i.    Notwithstanding the agreements to negotiate or Arbitrate any Dispute, nothing herein shall bar COTTMAN the right to proceed directly to court, under the usual equity rules, in order to obtain temporary restraining orders and preliminary or permanent injunctions against conduct (threatened or otherwise) that may cause COTTMAN irreparable harm.

ii.    With respect to any legal proceedings arising out of or connected in any way to this Agreement, OPERATOR and COTTMAN consent to the jurisdiction and venue of any court of general jurisdiction of Montgomery County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania, and the parties further agree that the mailing (by certified mail, return receipt requested) to such party's last known address of any process shall constitute lawful and valid process.

c.    Violation of Dispute Resolution Provision

In the event OPERATOR institutes arbitration in any venue other than those specified, or litigation in violation of the Mandatory Arbitration Provision, Cottman shall be entitled to a transfer or stay of said action, and OPERATOR shall assume all of COTTMAN's costs in connection with said transfer or stay, including but not limited to, reasonable counsel fees.

29. Controlling Law.

This Agreement has been entered into and shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

30. JURY WAIVER

OPERATOR AND COTTMAN HEREBY AGREE THAT THEY SHALL AND HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM, OR IN ANY MATTER WHATSOEVER WHICH ARISES OUT OF OR IS CONNECTED IN ANY WAY WITH THIS AGREEMENT OR ITS PERFORMANCE.

31. Entire Agreement.

This instrument contains the entire agreement of the parties, and supersedes, cancels, and revokes any and all other agreements between the parties relating to the subject matter of this Agreement. There are no representations or warranties, either oral or written, except those contained in this Agreement. Except as set forth in Section 6.c., this Agreement may be modified only by an agreement in writing signed by the party against whom enforcement of such modification is sought.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal on the date first above written.

WITNESS:                                COTTMAN TRANSMISSION SYSTEMS, LLC

_____               By: _____(Seal)
                                            Todd P. Leff, President

WITNESS:                                OPERATOR:

_____               _____(Seal)
                                        Joe Rego

WITNESS:                                OPERATOR:

_____               _____(Seal)

WITNESS:                                OPERATOR:

_____               _____(Seal)

TRANSFER OF FRANCHISE AGREEMENT TO A CORPORATION



The undersigned, an officer, director and owner of a majority of the issued and outstanding voting stock of the corporation set forth below and OPERATOR of a COTTMAN Transmission Center under a License Agreement executed on the date set forth below between himself and Cottman Transmission Systems, LLC. (COTTMAN) granting him a license to operate the CENTER at the location set forth below and the other undersigned directors, officers and shareholders of the corporation, who together with OPERATOR constitute all of the shareholders of the corporation, in order to induce COTTMAN to consent to the assignment of the License Agreement to the corporation in accordance with the provisions of Section 16 of the License Agreement agree as follows:

1. The undersigned OPERATOR shall remain personally liable in all respects under the License Agreement and all the other undersigned officers, directors and stockholders of the corporation, intending to be legally bound hereby, agree jointly and severally to be personally bound by the provisions of the License Agreement, specifically including the restrictive covenant contained in Section 20 hereof, to the same extent as if each of them were the OPERATOR as set forth in the License Agreement and they jointly and severally personally guarantee all of the OPERATOR's obligations set forth in said Agreement.

2. The undersigned agree not to transfer any stock in the corporation without the prior written approval of LICENSOR and agree that all stock certificates representing shares in the Corporation shall bear the following legend:

> The shares of stock represented by this certificate are subject to terms and conditions set forth in a License Agreement dated                    .between
>
> Joe Rego
>
> (OPERATOR) and Cottman Transmission Systems, LLC copies of which are on file in the principal offices of OPERATOR and Cottman.

3. Joe Rego shall devote his best efforts and full and exclusive time to the day-to-day operation and development of the License and the business of the Center.

4. Remach Chaplet, Inc. hereby agrees to become a party to and to be bound by all the provisions of the License Agreement executed on the date set forth below between OPERATOR and COTTMAN to the same extent as if it were named as the OPERATOR therein.

Date of License Agreement:_____

Location of Center: _____3145 Arden Way, Sacramento, CA  95825_____

WITNESS:

_____                                                    _____(Seal)
                                                                    Joe Rego

WITNESS:

_____                          _____(Seal)

WITNESS:

_____                          _____(Seal)

Attest:

_____          By:_____(Seal)
              Secretary                                              President

                                                              By:_____(Seal)
                                                                    Vice President

(Corporate Seal)

                                                              By:_____(Seal)
                                                                    Secretary

                                                              By:_____(Seal)
                                                                    Treasurer

In consideration of the execution of the above agreement, Cottman Transmission Systems, LLC, hereby consents
to the above assignment on this _____ day of _____ 2004.

COTTMAN TRANSMISSION SYSTEMS, LLC

By:_____(SEAL)
      Todd P. Leff, President



## APPENDIX C

Date_____

This will acknowledge that the following telephone numbers (and any others that may be subsequently used or established at my Cottman Transmission Center) are the property of Cottman Transmissions Communications Corp. and may used at my Cottman Transmission Center located at

<u>3145 Arden Way, Sacramento, CA 95825</u> ,
subject to the terms of the Cottman License Agreement:

916-486-1555
916-486-0294

and any and all "roll-over" numbers

I hereby acknowledge that any telephone numbers used at my Cottman Transmission Center will appear under Cottman's trademark in directory listings, advertising and yellow pages advertising. I hereby grant to Cottman Transmission Communications Corp., and/or Cottman Transmission Systems, LLC the irrevocable right to have any such telephone numbers removed, transferred, or suspended, from the aforementioned location in accordance with the terms of the Cottman License Agreement or in the event of the termination, rejection or recision of the Cottman License Agreement for any reason whatsoever.
I acknowledge that I may not make any service order changes to these numbers including, but not limited to, change of authorized parties, change of local or long distance providers, and termination or transfer of such telephones, and that any such changes to the account shall be null and void.

WITNESS:                                    LICENSEE:

_S Rennos_____              _____
                                            Joe Rego

_____              _____

_____              _____

EXHIBIT A

Electronic Debit Authorization

(Authorization Agreement for Pre-Authorized Payments
via ACH Debit Originations)

COMPANY NAME: _Remach Chaplet, Inc_____ FEIN: _20 - 1082758_

I (We) hereby authorize Cottman Transmission Systems, LLC, hereinafter called COMPANY, to initiate debit entries
to my(our) checking account indicated below in the depository named below, hereinafter called DEPOSITORY, to
debit the same to such account.

DEPOSITORY NAME: _Bank of America_ CITY & STATE: _Benicia, CA_

ABA/TRANSIT NO: _121000358_____ ACCOUNT NO: _0105109288_

This authorization is to remain in full force and effect until the underlying obligations per the License Agreement
have been satisfied in full or released in writing by COMPANY.

This authorization further confirms my understanding of the Addendum to License Agreement signed by me/us in
which I/we expressly agree that this authorization shall apply to any and all Depositories and Bank accounts with
which I/we open accounts during the term of the License Agreement and any renewals. Without limiting the
generality of the foregoing, I/we understand that if I/we close any bank account, I/we obligated to immediately, (i)
notify COMPANY thereof in writing, (ii) establish another bank account, and (iii) execute and deliver to COMPANY
all documents necessary for COMPANY to begin and continue making withdrawals from such depository/bank
account by ACH debiting or other electronic means.  I/we specifically agree and declare that this Authorization shall
be the only written authorization needed form me/us in order to initiate debit entries/ACH debit originations to
my/our bank account(s) established with any Depository in the future.

NAME(S):_____ SS#:_____
              (PLEASE PRINT)

_____ SS#:_____
              (PLEASE PRINT)

_____ SS#:_____
              (PLEASE PRINT)

DATE: _9|14|04_____ SIGNATURE(S):_____
                                            Joe Rego

_____

_____

_____