IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BENCHARSKY *et al.*, | No. C 08-03402 SI |
| Plaintiffs, | **ORDER GRANTING MOTION TO COMPEL ARBITRATION and GRANTING MOTIONS TO DISMISS** |
| v. | |
| COTTMAN TRANSMISSION SYSTEMS, LLC; AMERICAN DRIVELINE SYSTEMS, INC.; and DOES 1-50, | |
| Defendants. | |

On November 7, 2008, the Court heard argument on motions by defendant Cottman Transmission Systems, LLC ("Cottman") to compel arbitration and to dismiss, and a motion by defendant American Driveline System, Inc. ("ADS") to dismiss for lack of personal jurisdiction. Having considered the arguments of the parties and the papers submitted, the Court GRANTS Cottman's motions to compel arbitration and to dismiss. The Court also GRANTS ADS's motion to dismiss.

**BACKGROUND**

Plaintiffs Kund, LLC ("Kund") and Joseph Bencharsky entered into a franchise agreement in San Rafael, California with defendant Cottman, a franchisor of automotive repair businesses, on May 9, 2005. Complaint ¶ 8. Plaintiffs Remach Chaplet Corporation ("Remach") and Joseph Rego entered into a franchise agreement on September 14, 2004 with Cottman in Sacramento, California. *Id.* ¶ 9.

The relationship between defendants Cottman and ADS is disputed. According to plaintiffs, ADS, a Delaware corporation with its principal place of business in Pennsylvania, is the parent company of both Cottman and AAMCO. *Id.* ¶ 11. Plaintiffs allege that like Cottman, AAMCO is a franchisor

of auto transmission service franchises, and that Cottman and AAMCO are competitors. *Id.* Plaintiffs also allege that ADS is the alter ego of Cottman. *Id.* ¶ 15. ADS asserts that it is a holding company that owns a subsidiary that in turn owns some shares in Cottman. Decl. of Todd P. Leff in Supp. of Def. ADS Mot. to Dismiss ¶ 2. According to ADS, a subsidiary of this subsidiary owns the remainder of Cottman. *Id.*

Plaintiffs allege that Cottman and ADS marketed franchises to plaintiffs through defendants' Uniform Franchise Offering Circular ("UFOC"). Complaint, ¶ 20. The UFOC included the following representations: that Cottman had a proven system, that Cottman had recognized trademarks that Cottman would continuously promote, that each franchisee would have a renewable protected territory (the area where the franchisor has agreed not to franchise out to another franchisee), and that plaintiffs could acquire multiple Cottman locations under a discount plan. *Id.* Defendants concealed the fact that all of these representations were false. *Id.* ¶ 21. In reliance on these false representations, plaintiffs entered into franchise agreements with Cottman. *Id.* ¶ 23.

The franchise agreements between plaintiffs and Cottman include the following provision:

> COTTMAN and OPERATOR shall attempt to negotiation and settle any dispute, controversy or claim or cause of action (collectively "Dispute") arising out of or relating to this Agreement. In the event the Dispute is not settled through negotiation, the parties shall file the Dispute with the American Arbitration Association ("AAA") in Philadelphia, Pennsylvania or such other place as COTTMAN may designate.

*See* Decl. of William B. Jameson in Supp. of Def. Cottman Mot. to Compel Arbitration, at exs. A, C, § 28(a). The franchise agreements also contain a choice-of-law provision: "This Agreement has been entered into and shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania." *See id.* § 29.

Plaintiffs allege that in March of 2006, Cottman purchased AAMCO and stopped marketing the Cottman franchises. *Id.* ¶¶ 24, 26. Plaintiffs' franchises are located in a protected territory with AAMCO franchises. *Id.* ¶ 27. Cottman has offered to renew franchises of plaintiffs, but only under the AAMCO brand. *Id.* ¶ 30. In addition, Cottman refused to issue AAMCO franchises to plaintiffs in their existing locations because Cottman has AAMCO franchises near those locations. *Id.*

On June 20, 2008, Cottman filed a demand for arbitration against Bencharsky with the American Arbitration Association ("AAA"), alleging that Bencharsky owed Cottman over $30,000 for unpaid

2

franchise fees. Decl. of William B. Jameson in Supp. of Def. Cottman Mot. to Compel Arbitration, at ex. B, ¶ 3. Cottman listed Philadelphia as the locale for the arbitration hearing. *Id.*

On June 25, 2008, plaintiffs filed suit against defendants Cottman and ADS in Marin County Superior Court. Plaintiffs alleged breach of contract, fraud, negligent misrepresentation, interference with contractual rights; and violation of the California Franchise Investment Law ("CFIL"), Cal. Corp. Code §§ 31000 *et seq.*; and California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.* Defendants removed to this Court on July 15, 2008, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Now before the Court are Cottman's motion to compel arbitration and to dismiss the complaint and ADS's motion to dismiss the complaint for lack of personal jurisdiction.

**LEGAL STANDARD**

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *See Cohen v. Wedbush, Noble Cooke, Inc.*, 841 F.2d 282, 285 (9th Cir. 1988). The FAA espouses a general policy favoring arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Federal courts are required to rigorously enforce agreements to arbitrate. *See id.*

In determining whether to issue an order compelling arbitration, the Court may not review the merits of the dispute, but must limit its inquiry to (1) whether the arbitration agreement is governed by Chapter One of the Federal Arbitration Act (rather than Chapter Two or Chapter Three); (2) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce; (3) whether there exists a valid agreement to arbitrate; and (4) whether the dispute falls within the scope of the agreement to arbitrate. 9 U.S.C. §§ 2, 202, and 302; *see Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991), *cert denied*, 503 U.S. 919 (1992) (Courts must disregard contract

3

language and "consider only issues relating to the making and performance of the agreement to arbitrate") (citing *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)). If the answer to each of these queries is affirmative, then the Court must order the parties to arbitrate in accordance with the terms of their agreement. 9 U.S.C. § 4.

"The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [Federal Arbitration] Act is phrased in mandatory terms." *Standard Fruit*, 937 F.2d at 475; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (holding that the Act "leaves no place for the exercise of discretion by a district court").

## DISCUSSION

### 1. Defendant Cottman's Motion to Compel Arbitration

#### A. This Court must determine the validity of the arbitration clause

Cottman moves for the Court to compel arbitration of plaintiffs' claims. Plaintiffs do not dispute that (1) their claims are covered under Chapter One of the FAA, (2) the franchise agreements evidence interstate commerce, and that (3) the dispute falls within the scope of the agreement to arbitrate. Plaintiffs argue, however, that the arbitration agreement is invalid because it is unconscionable and therefore unenforceable under California law.

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable," but courts may decline to enforce them when grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Cottman argues that under *Nagrampa v. MailCoups*, 469 F.3d 1257 (9th Cir. 2006), this Court cannot reach the issue of whether the arbitration agreement is unenforceable and instead must refer that issue to the arbitrator. Courts must apply the "crux of the complaint" test to determine whether a court or an arbitrator should decide the validity of an arbitration agreement. 469 F.3d at 1263-64. "[W]hen the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question of whether the agreement, as a whole, is unconscionable must

4

be referred to the arbitrator." *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)). On the other hand, "[w]hen the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under 9 U.S.C. § 2 of the FAA." *Id.* at 1264.

In *Nagrampa*, the complaint fell into the latter category. Two of the franchisee's six causes of action "specifically and exclusively" challenged the validity of the arbitration provision, but the franchisee did not seek to invalidate the contract as a whole. *Id.* The district court therefore was correct to analyze whether the arbitration provision was unconscionable, rather than referring the issue to the arbitrator. *Id.*

Here, as in *Nagrampa*, the crux of plaintiffs' complaint is not the invalidity of the contract as a whole. Plaintiffs' claims for breach of contract and interference with contractual rights depend on their allegations that Cottman breached the parties' franchise agreement and that ADS interfered with plaintiffs' contractual rights under that agreement. Both causes of action are predicated on the existence of a valid contract. The crux of plaintiffs' complaint is therefore the invalidity of the arbitration provision, not the invalidity of the entire licensing agreement.

Cottman notes that plaintiffs seek (1) rescission of the contract and (2) a declaratory judgment that the contract is invalid and unenforceable. According to Cottman, these requests for relief demonstrate that plaintiffs seek to invalidate the contract as a whole, not just the arbitration provision. The Court disagrees. Plaintiffs' cause of action for declaratory relief seeks a determination that "the franchise agreements contain unconscionable provisions," not that the entire agreement is invalid. *See* Complaint ¶ 66. In addition, the fact that plaintiffs seek rescission of the contract does not necessarily establish that they seek to prove that the contract is invalid. Rescission of a contract is available as a remedy for original invalidity, fraud, failure of consideration, or material breach or default. *See* Cal. Civ. Code § 1689; *Calabrese v. Rexall Drug & Chemical Co.*, 218 Cal. App. 2d 774, 782 (Cal. Ct. App. 1963). Plaintiffs therefore could seek rescission as a remedy for defendants' alleged material breach of the contract.

Cottman also argues that the crux of plaintiffs' complaint cannot be that the arbitration provision is invalid because plaintiffs never reference the arbitration clause in their complaint. Cottman fails to

5

cite any authority, however, establishing that *Nagrampa* imposes a pleading requirement on plaintiffs who seek to have a court, rather than an arbitrator, determine the validity of an arbitration clause. Here, plaintiffs have argued in their opposition motion that arbitration clause (and not the contract as a whole) is invalid. The Court therefore finds that it is not dispositive that plaintiffs failed to allege the invalidity of the arbitration clause in their complaint. *See Winter v. Window Fashions Professionals, Inc.*, 166 Cal. App. 4th 943, 949 (Cal. Ct. App. 2008) (holding that despite the absence of a challenge to the arbitration provision in the complaint, unconscionability was question for the court because the opposition to the petition to compel arbitration specifically attacked the arbitration clause); *Higgins v. Superior Court*, 140 Cal. App .4th 1238, 1245 (Cal. Ct. App. 2006) (same).

For these reasons, the Court concludes that the issue of whether the arbitration clause in the parties' contract is unconscionable is a question for this Court, not an arbitrator.

**B.    The enforceability of the arbitration clause must be decided under California law because enforcing the choice of law provision would violate a fundamental policy of California**

The parties dispute whether the issue of unconscionability should be decided under California or Pennsylvania law. Cottman argues that under the choice-of-law provision in section 29 of the licensing agreement, Pennsylvania law governs the terms of the contract. Plaintiffs do not address the issue directly, but argue that the choice of law provision is an element of the contract that adds to the substantive unconscionability of the arbitration clause. "Federal courts sitting in diversity look to the law of the forum state in making choice of law determinations." *Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1065 (N.D. Cal. 2007) (citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005)). In the instant case, plaintiffs filed their complaint in California, so California's choice-of-law rules govern the issue of whether the choice-of-law provision is enforceable.

"[C]hoice of law provisions are usually respected by California courts." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464 (Cal. 1992) (citation omitted). In *Nedlloyd Lines*, the California Supreme Court described the analytical framework to be applied by courts in determining whether to enforce a choice-of-law provision:

> [T]he court first [must] determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the

6

> end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue. If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Id.* at 466 (internal citations and ellipses omitted) (emphasis in original).

The contract in this case was signed in Pennsylvania and plaintiffs do not deny that Pennsylvania has a substantial relation to the parties. The issue is whether Pennsylvania law is contrary to a fundamental policy of California. Plaintiffs argue that the California Franchise Investment Law ("CFIL"), Cal. Corp. Code §§ 31000, *et seq.*, embodies such a policy, and that the CFIL cannot be enforced under Pennsylvania law. In enacting the CFIL, the California Legislature declared its underlying policy:

> California franchisees have suffered substantial losses where the franchisor or his representative has not provided full and complete information regarding the franchisor-franchisee relationship. . . . It is the intent of this law to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered.

Cal. Corp. Code § 31001. Courts have recognized the importance of the CFIL in protecting the rights of California franchisees. *See, e.g.*, *Cottman Transmission Systems, LLC v. Kershner*, 492 F. Supp. 2d 461, 467 (E.D. Pa. 2007) (CFIL embodies fundamental policy of California); *America Online, Inc. v. Superior Court*, 90 Cal. App.4th 1, 11 (Cal. Ct. App. 2001) (CFIL "enacted to protect the statute's beneficiaries from deceptive and unfair business practices"); *Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc.*, 32 Cal. App. 4th 1511, 1521 (Cal. Ct. App. 1995) ("In enacting the [CFIL], our Legislature showed a special solicitude for franchisees in their dealings with franchisors."). In light of these authorities, the Court concludes that the CFIL embodies a fundamental policy of California.

The next step of the analysis requires this Court to determine whether Pennsylvania law affords franchisees fewer protections than are available under the CFIL. The comparison in *Cottman Transmission Systems, LLC* of the CFIL to Pennsylvania law is instructive here:

> Under the California, . . . franchise statute[], persons who directly or indirectly control other persons liable under the state['s] franchise acts are [] liable without the need to pierce the corporate veil. *See* Cal. Corp. Code § 31302. Thus, the franchise

7

> disclosure statutes enable the Franchisees to bring actions against [individual defendant] in this case without having to pierce the corporate veil.
> Furthermore, under Pennsylvania common law fraud, the franchisor has the defense that its representations were not misrepresentations because they were factual. Under the [CFIL], on the other hand, the franchisor would have to establish that it provided information in a nonmisleading manner. *E.g.*, Cal. Corp. Code § 31012 (expressly stating that under the Act, "'fraud' and 'deceit' are not limited to common law fraud or deceit").

492 F. Supp. 2d at 469 (references to New York and Wisconsin franchise statutes omitted). For these reasons, the Court finds that Pennsylvania law is contrary to the fundamental public policy of California embodied in the CFIL.[1]

Finally, the Court must determine whether California has a materially greater interest than Pennsylvania in determining whether the arbitration clause of the parties' licensing agreement is unconscionable. Neither party addresses this issue. The declarations submitted in support of the parties' motions establish that both Pennsylvania and California have interests in this case. Cottman's principal place of business is in Philadelphia and plaintiffs Bencharsky and Rego traveled to Pennsylvania to sign their license agreements. *See* Decl. of Kathleen McPeak in Supp. of Cottman Mot. to Compel Arbitration ("McPeak Decl."), ¶ 2. Cottman also required new franchisees to attend a three-week training at their home office. *See* Decl. of Joseph Bencharsky in Supp. of Opp. to Mot. to Compel, ex. A, p. 40. On the other hand, Bencharsky and Rego live in California and their Cottman franchises are located in this state. *See id.* ¶ 2; Decl. of Joseph Rego in Supp. of Opp. to Mot. to Compel, ¶ 2. The principal harm, if any, was therefore committed in California on citizens of this state. In light of California's interest, as expressed in the CFIL, in protecting franchisees, the Court finds that these facts weigh in favor of finding that California has a materially greater interest than Pennsylvania in interpreting the arbitration clause at issue here.

For these reasons, the Court concludes that the choice-of-law provision in the parties' agreement

---

[1] Cottman urges the Court to find that Pennsylvania law is not contrary to the CFIL. According to Cottman, plaintiffs would be able to assert their CFIL claims in arbitration in Pennsylvania. Cottman relies on *Cottman Transmission Systems, LLC*, but in that case, the plaintiff franchisees' suit had proceeded in federal district court. *Cottman* did not establish that a district court has the authority to order an arbitrator to allow statutory claims under California law that conflict with the choice of law provision in the arbitration agreement. The Court recognizes that *Smith v. Paul Green School of Rock Music Franchising, LLC*, Case No. 08-888, 2008 U.S. Dist. LEXIS 38356, at *15-16 (C.D. Cal. May 20, 2008) (unpublished disposition), held otherwise when the defendant conceded that the plaintiffs could assert their CFIL claims, but this Court does not find that case persuasive.

8

is unenforceable for purposes of determining the validity of the arbitration provision. This Court will therefore apply California law in determining whether the arbitration clause is unconscionable.

### C. Certain portions of the arbitration provision are unconscionable

"California courts analyze contract provisions for both procedural and substantive unconscionability." *Nagrampa*, 469 F.3d at 1280 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000)). Both elements of unconscionability must be present in order for a court to invalidate a contract on unconscionability grounds, but they need not be present in the same degree: "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Armendariz*, 24 Cal. 4th at 114 (citation omitted). "In determining the 'validity and enforceability' of forum selection provisions in franchise agreements, [California] courts must put the burden on the franchisor to show that litigation in the contract forum will not diminish in any way the substantive rights afforded California franchisees under California law." *Wimsatt v. Beverly Hills Weight Int'l, Inc.*, 32 Cal. App. 4th 1511, 1522 (Cal. Ct. App. 1995).

#### a. Procedural unconscionability

"'Procedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. It focuses on factors of oppression and surprise. The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." *Kinney v. United HealthCare Services, Inc*., 70 Cal. App. 4th 1322, 1329 (1999) (citations omitted). "Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (Cal. Ct. App. 2001) (citation omitted). "The threshold inquiry in California's unconscionability analysis is 'whether the arbitration agreement is adhesive.'" *Nagrampa*, 469 F.3d at 1281 (citing *Armendariz*, 24 Cal. 4th at 113). A contract of adhesion "signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Graham v. Scissor-Tail, Inc*., 28 Cal. 3d 807, 817 (Cal. 1981) (citation omitted).

As a national franchisor, Cottman was in a stronger financial position than plaintiffs. Rego spent $175,000, "most of [his] life savings," to open his franchise. *See* Rego Decl. ¶ 8. Bencharsky invested $200,000, a sum that represented most of his life savings, as well. *See* Bencharsky Decl. ¶ 8. Plaintiffs did not negotiate the terms of the agreement. *See id.* ¶ 5. There is no evidence that plaintiffs could have opted out of the arbitration provision. These facts establish that the licensing agreements in this case are contracts of adhesion.

There are, however, few other aspects of procedural unconscionability present. Rego and Bencharsky contacted Cottman after learning about the franchise offer. *See* Rego Decl. ¶ 3, Bencharsky Decl. ¶ 3. They traveled to Pennsylvania to sign the agreement. *See* McPeak Decl. ¶ 2. Rego told Cottman's paralegal that he had consulted with a lawyer before signing the license agreement. *See id.* ¶ 3. The arbitration clause is set forth in the same size font as the rest of the agreement. The words "mandatory arbitration" appear in a distinct heading. The words "jury waiver" and the text of the jury waiver provision, are in capital letters. The relevant clauses are clearly and succinctly worded. All of these factors indicate that the procedural unconscionability is minimal.

### b. Substantive unconscionability

"Substantive unconscionability focuses on the particular terms of the contract and whether those terms are so one-sided as to *shock the conscience*." *Kinney*, 70 Cal. App. 4th at 1330 (emphasis in original) (citation omitted). "Where the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress in either an arbitral or judicial forum, California courts have found a lack of mutuality supporting substantive unconscionability." *Nagrampa v. MailCoups, Inc.*, 469 F.3d at 1285. "The principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees appears to be undisputed." *Armendariz*, 24 Cal. 4th at 103. Plaintiffs argue that several aspects of substantive unconscionability are present here.

<u>Lack of mutuality to equitable relief</u>

Section 28(b)(ii) of the license agreement provides, in relevant part, "[N]othing herein shall bar COTTMAN the right to proceed directly to court, under the usual equity rules, in order to obtain temporary restraining orders and preliminary or permanent injunctions against conduct . . . that may

10

1 cause COTTMAN irreparable harm." Plaintiffs argue that the arbitration agreement is unconscionable
2 because it provides Cottman the right to seek a temporary restraining order or injunctive relief in court,
3 while plaintiffs' only option is arbitration. Cottman asserts that it has a business motivation – relief for
4 trademark infringement – for reserving its right to seek relief in court. However, California courts
5 "routinely" have rejected trademark protection as a legitimate basis for allowing only one party to an
6 agreement access to the courts for provisional relief. *Id.* at 1286. (citations omitted). The Court agrees
7 with plaintiffs that Cottman, the stronger party, reserved greater rights through this non-mutual
8 provision. Accordingly, the Court finds that this provision of the clause is substantively unconscionable.

<u>Limitation on relief available by statute</u>

Plaintiffs argue that two clauses in the arbitration provision limit rights that would otherwise be available under statute. Section 28(a) provides, in relevant part:

> [T]he arbitrator(s) shall have the right to award or include in the award any relief which the arbitrator(s) deems proper in the circumstances (other than punitive or exemplary damages), including without limitation, money damages . . . , specific performance, and injunctive relief.
> . . .
> Claims in arbitration must, if at all, be asserted and served upon the other party within one (1) year after the occurrence of facts giving rise to such Dispute.

Plaintiffs argue that the bar on recovery of punitive and exemplary damages and the one-year statute of limitations are substantively unconscionable because they preclude relief that is made available to plaintiffs by statute. Plaintiffs are correct that an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights. *See Armendariz*, 24 Cal. 4th 83, 101 (Cal. 2000) ("[P]arties agreeing to arbitrate statutory claims must be deemed to consent to abide by the substantive and remedial provisions of the statute.") (citation omitted); *see also Nagrampa*, 469 F.3d at 1292 ("California courts refuse to enforce arbitration provisions on public policy grounds if they impede the enforcement of unwaivable statutory rights.").

The two clauses challenged by plaintiffs bar relief that would otherwise be available to plaintiffs under an unwaivable California statute. Cottman does not dispute plaintiffs' contention that punitive damages can be awarded under the CFIL. *See* Cal. Corp. Code § 31301 ("damages" available when franchisor is found liable for fraudulent inducement). In addition, the CFIL has a statute of limitations of up to four years. *See* Cal. Corp. Code § 31303. The CFIL is unwaivable. *See* Cal. Corp. Code §

31512. The Court agrees with plaintiffs that these clauses of the arbitration provision would bar relief otherwise available to them by unwaivable statute. The clauses are therefore substantively unconscionable.

### Limitation of arbitrator's power

Finally, Section 28(a) provides that "[t]he arbitrator(s) shall have no authority to alter or modify any provision of this Agreement or to render an award which by its terms results in such an alteration or modification." Plaintiffs argue that this provision renders the arbitration clause unconscionable because it limits the arbitrator's ability to award punitive damages, apply California law, or strike the provisions shortening the statute of limitations and requiring the losing party to pay the arbitrator.[2] As discussed above, however, the Court has established that California law must be applied and that the challenged clauses must be stricken. With the unconscionable clauses eliminated, the Court finds that the arbitrator's power is not unduly limited.

### Fee splitting

Section 28(a) also provides that the arbitrator shall be paid by the losing party. Plaintiffs argue that this clause renders the arbitration provision unconscionable. Under California law, if plaintiffs make a prima facie showing that their statutory claims affect the public interest, they are entitled to an advance fee allocation ruling to enable them to vindicate their statutory rights. *See Nagrampa*, 469 F.3d at 1293; *see also Armendariz*, 24 Cal. 4th at 110 ("[C]ost issues should be resolved not at the judicial review stage but when a court is petitioned to compel arbitration."); *Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court*, 133 Cal. App. 4th 396, 417 (Cal. Ct. App. 2005) (applying *Armendariz* rule on pre-arbitration fee allocation to franchise context).

Plaintiffs have provided declarations attesting that they have spent their savings buying Cottman franchises. They do not, however, provide the Court with any evidence of their net worth or of the likely administrative fees in this case. *Cf. Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 90-91 (Cal. Ct. App. 2003) (plaintiffs submitted their income, expenses and savings; AAA rules on costs; declaration from AAA administrator describing cost calculations; and likely size of administrative fee).

---

[2] The fee provision is discussed below.

12

On this record, the Court cannot find that the likely administrative costs would exceed plaintiffs' ability to pay, should they lose at arbitration. Accordingly, the Court declines to order that all arbitration costs must be borne by Cottman.

### D.  The unconscionable elements of the arbitration clause are severable

Cottman argues that any elements of the arbitration provision the Court deems to be unconscionable can be severed from the contract. Plaintiffs urge the Court to invalidate the entire arbitration provision.

"[T]he court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results." Cal. Civil Code § 1670.5. "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Armendariz,*  24 Cal. 4th at 124.

The "central purpose" of the licensing agreement was to allow plaintiffs to open Cottman franchises. Plaintiffs do not argue that this purpose is illegal and that the entire contract cannot be enforced – indeed this argument would contradict their contention that they challenge only the arbitration clause and not the licensing agreement as a whole. The Court also recognizes its duty under the FAA to enforce arbitration agreements. Accordingly, the Court will uphold the arbitration provision while severing the unconscionable clauses. The clauses limiting the statute of limitations to one year, barring punitive damages, and awarding equitable relief to Cottman alone are hereby stricken from the licensing agreement. For the reasons discussed above, the choice of law provision is unenforceable and the arbitrator must apply California law. All other clauses in the arbitration provision are valid.

### E.     This Court does not have jurisdiction to compel arbitration in Pennsylvania

The parties dispute the appropriate forum for the arbitration in this case. The licensing agreement provides that arbitration must be carried out in Pennsylvania. The Court need not reach the question of whether this provision is valid because this Court has no jurisdiction to compel arbitration

13

in Pennsylvania. The Ninth Circuit's 1941 decision in *Cont'l Grain Co. v. Dant & Russell* remains the controlling authority on where a district court can compel arbitration. 118 F.2d 967, 968-69 (9th Cir. 1941); *see also Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1271 n.1 (9th Cir. 2002) (comparing the Ninth Circuit position with a Fifth Circuit holding in *Dupuy-Busching Gen. Agency v. Ambassador Ins. Co.*, 524 F.2d 1275, 1276-78 (5th Cir.1975)). "*Continental Grain* interprets section 4 of the FAA as limiting courts to ordering arbitration within the district in which the suit was filed. The Ninth Circuit has indirectly confirmed this interpretation [], stating that 'by its terms, § 4 only confines the *arbitration* to the district in which the petition to compel is filed.'" *Homestake Lead Co. of Missouri v. Doe Run Resources Corp.* 282 F. Supp. 2d 1131, 1143-44 (N.D. Cal. 2003) (citing *Textile Unlimited, Inc. v. A..BMH and Co., Inc.*, 240 F.3d 781, 785 (9th Cir.2001) (emphasis in original)). The Court therefore finds that it is precluded from ordering arbitration in the contractually-designated forum of Pennsylvania.

Accordingly, the Court may not compel arbitration in Pennsylvania, but GRANTS Cottman's motion to compel arbitration insofar as arbitration is to proceed in the Northern District of California. Plaintiffs' complaint against Cottman is dismissed without prejudice. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (Where an "arbitration clause [is] broad enough to bar all of the plaintiff's claims since it required [the plaintiff] to submit all claims to arbitration," those claims may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).).

### G.  Plaintiffs' meeting of the minds argument is moot

Cottman's California UFOC included a list of "risk factors," including the following:

> THE FRANCHISE AGREEMENT REQUIRES BINDING ARBITRATION. THE ARBITRATION WILL OCCUR AT PHILADELPHIA, PENNSYLVANIA. EACH PARTY PAYS ITS OWN COSTS EXCEPT THAT THE LOSING PARTY SHALL PAY THE ARBITRATOR. THIS PROVISION MAY NOT BE ENFORCEABLE UNDER CALIFORNIA LAW.

*See* Bencharsky Decl., ex. A, at 46 (all caps in original). Plaintiffs argue that this provision of the UFOC resulted in a lack of meeting of the minds between the parties as to mandatory arbitration and the venue for arbitration. When a UFOC includes a warning that a provision may not be enforceable and there is no evidence that the franchisor "ever indicated that it would insist upon an out-of-state forum despite the contravening California law" referred to in the UFOC, there may not have been a

14

meeting of the minds as to that provision. *See Laxmi Invs., LLC v. Golf USA*, 193 F.3d 1095, 1097 (9th Cir. 1999).

Here, plaintiffs' argument regarding the venue for arbitration is moot in light of the Court's conclusion that it cannot compel arbitration in Pennsylvania. As for mandatory arbitration, the Court has found that the clauses of the arbitration provision that are invalid under California law can be severed, thus salvaging the remainder of the arbitration provision. Accordingly, the arbitration provision is enforceable under California law and plaintiffs' argument with respect to this clause is also moot.

**2.     Defendant ADS's Motion to Dismiss for Lack of Personal Jurisdiction**

ADS has moved to dismiss plaintiff's complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiffs argue that this Court has personal jurisdiction over ADS because it is the alter ego of Cottman. The flaw with this allegation is that if true, it follows that plaintiffs must resolve their claims against ADS through arbitration. The only claims against ADS that can survive Cottman's motion to compel arbitration are those against ADS alone. Plaintiffs' only such claim is that ADS tortiously interfered with plaintiffs' contractual rights by causing Cottman to breach its contract with plaintiffs. *See* Complaint ¶ 61. Plaintiffs' cause of action against ADS therefore depends on whether Cottman breached its contract, which will be determined through arbitration.

Accordingly, the Court GRANTS ADS's motion to dismiss plaintiffs' complaint without prejudice to refiling after arbitration.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Cottman's motion to compel arbitration, GRANTS Cottman's motion to dismiss without prejudice, and GRANTS ADS's motion to dismiss without prejudice.

**IT IS SO ORDERED.**

Dated: 12/29/08

SUSAN ILLSTON
United States District Judge